HARBOR INSURANCE COMPANY, Plaintiff-Appellant, v. ARTHUR ANDERSEN & COMPANY *et al.*, Defendants-Appellees (Arthur Andersen & Company *et al.*, Third-Party Plaintiffs and Counterdefendants-Appellees; American Home Assurance Company *et al.*, Third-Party Defendants; Liberty Mutual Insurance Company, Third-Party Defendants–Appellants; North Star Reinsurance Corporation *et al.*, Counterplaintiffs-Appellants).

First District (5th Division)   Nos. 85—2262, 85—3239 cons.

Opinion filed November 7, 1986.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Anthony P. Katauskas, and Lloyd E. Williams, Jr., of counsel), for appellant Harbor Insurance Company.

Plotkin & Jacobs, Ltd., and William J. Harte, Ltd., both of Chicago, and Siff & Newman, P.C., of New York, New York (Robert Plotkin, Thomas R. Newman, and William J. Harte, of counsel), for appellants North Star Reinsurance Corporation and United States Fire Insurance Company.

Robert D. McLean, Michael J. Sweeney, Jeffrey R. Tone, and Anne M. Gallagher, all of Sidley & Austin, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Appellants Harbor Insurance Company, North Star Reinsurance Corporation, United States Fire Insurance Company, and Liberty Mutual Insurance Company appeal from a summary judgment order of the circuit court of Cook County finding that a claim by appellees Arthur Andersen & Company, Arthur Andersen & Company (Switzerland), and Arthur Andersen & Company, S.A. (hereinafter referred to as Andersen) was covered by the appellants' 1971 excess-liability-coverage policies, rather than by certain 1975 policies. In this cause we have also consolidated a subsequent appeal by Harbor from the circuit court's judgment order determining the amount of Harbor's obligation to Andersen.

All the appellants contend that the circuit court erred in finding

that as a matter of law: (1) the 1971 policies covered Andersen's loss; (2) certain provisions contained in the policies of Harbor and North Star bound them to follow the determination of the primary carrier, Underwriters at Lloyd's, that the 1971 policies covered Andersen's loss. Appellate Liberty also asserts that its 1971 policy does not cover Andersen's loss because Andersen did not comply with the notice requirement of Liberty's policy, which differed from those of the other appellants.

We affirm the trial court's determination of coverage as to Harbor, North Star, and United States Fire, but remand for further proceedings as to Liberty.

Andersen, an accounting firm, was insured for professional liability by Lloyd's under two policies providing primary coverage for claims made during two different periods: 1971-72 and 1974-75. The appellants and certain other insurance companies not involved in this appeal each issued to Andersen excess-insurance policies providing varying amounts of coverage in excess of the Lloyd's 1971 and/or 1975 primary policies. Incorporated into the appellants' policies was the provision in the Lloyd's primary-coverage policies that, in addition to coverage for claims made during the policy period, coverage would be provided for claims made after the policy period under the following conditions:

"If during the currency hereof:
\*\*\*

(i) the assured firm shall receive written notice from any third party that it is the intention of such third party to hold the assured firm responsible for the results of any specified alleged negligent act, error or omission, whether of acts, facts, law or otherwise, or breach of contract or libel or slander; or

(ii) the assured firm shall become aware of any occurrence which may subsequently give rise to a claim being made against them in respect of any alleged negligent act, error or omission, whether of acts, facts, law or otherwise, or breach of contract or libel or slander;

(iii) and shall in either case during the currency hereof give written notice to the Underwriters of the receipt of such written notice under (i) above or of such occurrence under (ii) above then any claim which may subsequently be made against the assured firm arising out of such alleged negligent act, error or omission, whether of acts, facts, law or otherwise, or breach of contract or libel or slander shall for the purpose of this policy be treated as a claim made during the currency

hereof."

With the possible exception of Liberty's policy, all the appellants' policies also incorporated the Lloyd's policy requirement that notice be given to the New York law firm of Mendes & Mount. The Liberty policy differed from the primary policy in that it stated:

> "Notice of claims required by the primary policy shall be given to [Liberty] at its Home Office, 175 Berkeley Street, Boston, Massachusetts U.S.A."

During the 1971 policy year Andersen, King Resources Company (KRC) (for which Andersen had performed auditing and accounting services), and certain directors and officers of KRC were sued by certain shareholders and debentureholders of Dietrich Corporation. Andersen notified Mendes & Mount of the Dietrich complaint, enclosing a copy of that complaint, in a letter dated September 30, 1971.

In 1975 a related group of corporations, referred to collectively as Fund of Funds, sued Andersen. Mendes & Mount was notified of this complaint in a letter from Andersen dated February 6, 1975. That same year Lloyd's determined that this was a claim under Andersen's 1971 policy. Fund of Funds, Ltd., (FOF) obtained a judgment against Andersen following a trial in Federal court. (*Fund of Funds, Ltd. v. Arthur Andersen & Co.* (S.D.N.Y. 1982), 545 F. Supp. 1314.) In 1983, during the pendency of the appeal, the parties reached a settlement agreement. Pursuant to the prior determination by Lloyd's that this was a claim under the Lloyd's 1971 policy, 35 of the 36 insurance companies with 1971 excess-liability coverage policies made payments to Andersen under the terms of those 1971 policies. However at least three of the companies which paid, appellants North Star, United States Fire, and Liberty, reserved the right to secure a determination of the appropriate date of claim. Appellant Harbor only paid based on the terms of its 1975 policy.

Harbor also filed this declaratory judgment action asserting that its 1975 policy was applicable rather than its 1971 policy. Andersen then filed a third-party complaint against all the 1971 and 1975 insurers, seeking a declaration that the 1971 policies were applicable, or if the court disagreed, that the 1975 insurers were liable for the loss. Appellants North Star, United States Fire, and Liberty all contended in the circuit court that their 1975 policies applied. United States Fire and North Star filed a counterclaim against Andersen, seeking recovery of the amounts paid under their 1971 policies minus any amounts due under their 1975 policies.

On June 27, 1985, the circuit court granted Andersen's motion for summary judgment as to, *inter alia*, Harbor's action for declara-

tory judgment, Andersen's counterclaim against Harbor, and one count of the counterclaim of United States Fire and North Star. The court severed and transferred to the law division the remaining count of the latter counterclaim, in which it was alleged that Andersen and Lloyd's acted in bad faith in determining that the 1971 policies applied.

One basis of the circuit court's decision was that as a matter of law Lloyd's was correct in determining that its 1971 policy applied to the Fund of Funds, Ltd., claim. Appellants contend that this was erroneous. According to the applicable 1971 policy provision, set out above, coverage would be provided for claims made after the policy period if during the currency of the policy Andersen became aware of "any occurrence" which might subsequently give rise to a claim being made against them and gave written notice of that occurrence.

As we have noted, in 1971 Andersen, King Resources Company, and certain directors and officers of KRC were sued by certain shareholders and debentureholders of Dietrich Corporation. The plaintiffs sought to hold Andersen liable for alleged negligence in connection with its audits of King Resources Corporation, which was engaged in production activities for oil and gas wells and the sale of natural-resource properties. Plaintiffs alleged that Andersen and the other defendants had conspired to give the plaintiffs untrue, deceptive, and misleading information concerning KRC. The complaint alleged that beginning in 1968 KRC sold many natural-resource properties to Investors Overseas Services, Ltd. (IOS), and mutual funds controlled by IOS. (It is undisputed that Fund of Funds, Ltd., was one of these mutual funds.) However, defendants allegedly failed to adequately disclose that because of many affiliations between IOS and KRC that they were not actually dealing at arm's length. One such affiliation was KRC's role as an investment advisor to "an important IOS natural resources fund" (apparently the Natural Resources Fund Account). Because KRC failed to properly account for the sale of certain KRC natural-resource interests to such affiliates, it was alleged that KRC's revenues and assets were overstated and its expenses and liabilities were understated.

The Dietrich complaint also alleged that certain KRC transactions in Arctic permits with associated parties were carried out for the purpose of materially increasing reported net profits and assets. The complaint further alleged that Andersen had not properly disclosed to investors the circumstances of those transactions.

The *Fund of Funds* case was filed in 1975 against Andersen as auditor and accountant for IOS and certain related business entities,

including Fund of Funds, Ltd. Our review of the district court opinion in that case (*Fund of Funds, Ltd. v. Arthur Andersen & Co.* (S.D.N.Y. 1982), 545 F. Supp. 1314) establishes that in significant respects the dispute and evidence in *Fund of Funds* arose out of the dispute in Dietrich. In *Fund of Funds* it was alleged that Andersen had failed to disclose evidence that KRC sales to the Natural Resources Fund Account (NRFA) (established by FOF to invest in oil, gas, and mineral properties) were made at prices which knowledgeable industry purchasers would not have paid. The district court found there to be considerable evidence that although KRC was purportedly dealing at arm's length with NRFA, in fact KRC controlled and managed NRFA. The court also cited evidence that Andersen knew KRC sales to FOF had significantly higher profits than sales to King affiliates. As evidence of Andersen's knowledge concerning NRFA and KRC the court cited the fact that Andersen audited both KRC and NRFA, with the same Andersen partner and manager involved in each. Indeed the court noted that the NRFA audit was performed by using KRC records.

A second contention in *Fund of Funds* was that Andersen had failed to disclose to Fund of Funds, Ltd., that KRC had arranged non-arm's-length, non-*bona-fide* sales of a small portion of FOF's Arctic oil and gas exploration interests to nonindependent third parties in order to support a large upward revaluation of the remainder of FOF's interest. It was further alleged that although this transaction failed to comply with guidelines worked out between Andersen and KRC, Andersen issued a "clean opinion" of the transaction, inducing FOF to approve and ratify the sale.

■ These facts conclusively establish that the *Fund of Funds* suit was based in part on actions of Andersen first alleged in the Dietrich complaint. For the first time on appeal, Harbor also contends, however, that the policies also required that all these underlying actions of Andersen occur "during the policy period"; that is, in 1971. An issue not presented to or considered by the trial court is deemed to be waived and need not be considered on review, even in an appeal from summary judgment. (*Cardamone v. Allstate Insurance Co.* (1977), 49 Ill. App. 3d 435, 364 N.E.2d 460.) Furthermore, we find no validity to this construction of the language of the policies, which would require Andersen to immediately recognize possible negligence in auditing procedures and all the consequences of that possible negligence.

■ The policies also required that notice of the occurrence be given to the firm of Mendes & Mount as agent for Lloyd's. It is un-

disputed that in 1971 Andersen notified Mendes & Mount of the Dietrich suit and also sent them a copy of the complaint. Based on our finding that the subsequent *Fund of Funds* suit arose out of the allegations of the Dietrich complaint, we find that notification of the complaint constituted sufficient notice of an occurrence which might give rise to subsequent claims, as required by the policies of Harbor, North Star, and United States Fire.

■ We have noted, however, that Liberty's policy purported to require that notice of such an occurrence be given directly to Liberty rather than to Mendes & Mount. Liberty has contended in the trial court and on appeal that no such notice was given to it. Andersen has apparently never responded to this contention and the circuit court never ruled on it. Accordingly, because it would appear that a question of fact remains as to this issue, summary judgment as to Liberty should not have been granted. (*Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 466 N.E.2d 1271.) We therefore must reverse and remand as to this aspect of Liberty's contention that its 1971 policy did not apply to the Fund of Funds, Ltd., claim.

Because of our disposition of these issues we do not reach the appellants' contentions concerning another clause of their policies construed by the circuit court as binding appellants to the determination of Lloyd's concerning coverage. We also need not consider the appellant's contentions that Lloyd's did not make this determination in good faith.

The judgment of the circuit court is affirmed in all respects except as to Liberty's claim. Summary judgment to that claim is reversed and that portion of this cause is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

PINCHAM and MURRAY, JJ., concur.