107 F.3d 1344
 97 Cal. Daily Op. Serv. 1345, 97 Daily Journal
D.A.R. 1998
CONTINENTAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
METRO-GOLDWYN-MAYER, INC.; Kirk Kerkorian; Jeffrey
Barbakow, Defendants-Appellees.
 No. 95-56081.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1996.
Decided Feb. 26, 1997.
 
 Stephen J. Kaufman and Don A. Lesser, Long & Levit, Los Angeles, CA, for plaintiff-appellant.
 Travers D. Wood, Gary L. Urwin, Robert L. Wilkerson, and Renee M. Rubin, White & Case, Los Angeles, CA, for defendant-appellee Metro-Goldwyn-Mayer, Inc.
 Eric Landau, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, CA, for defendants-appellees Kirk Kerkorian and Jeffrey Barbakow.
 Appeal from the United States District Court for the Central District of California, Manuel L. Real, Chief Judge, Presiding. D.C. No. CV-94-06292-R.
 Before FARRIS, BEEZER and TASHIMA, Circuit Judges.
 BEEZER, Circuit Judge.
 
 
 1
 Plaintiff-Appellee Continental Insurance Company filed a declaratory judgment action seeking a declaration that defendants Metro-Goldwyn-Mayer, Kirk Kerkorian and Jeffrey Barbakow failed to comply with the notice provisions of a directors' and officers' liability policy issued to defendants by Continental. The district court granted summary judgment for defendants, and Continental appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 2
 * Continental Insurance Company ("Continental")[1] issued a Directors' and Officers' Liability Insurance Policy to MGM and the directors and officers of MGM, who include Kirk Kerkorian and Jeffrey Barbakow, defendants in this case (collectively, "MGM" or "MGM defendants"). This policy provided coverage from September 25, 1989 to September 25, 1990. MGM sought to renew the policy for an additional year, but Continental refused to extend coverage. MGM then exercised its right under the policy to extend coverage for an additional "discovery period" of one year. The discovery period extended coverage through September 25, 1991. The policy indemnifies MGM and its directors and officers for claims made against the insureds and reported to Continental during either the policy or discovery period.
 
 
 3
 In a September 20, 1990 letter to Continental, MGM gave notice of several claims and potential claims arising out of the merger between MGM and Pathe Communications. This list of pending litigation included the Grimaldi complaint, a potential class action suit by producers alleging "that the Pathe acquisition of MGM and related distribution agreements will render MGM/UA insolvent and therefore unable to satisfy its obligations to the class." MGM sent a copy of the Grimaldi complaint to Continental during the discovery period. MGM's "laundry list" of potential claims also included the following notification: "There is a potential that producers other than Grimaldi may contend that MGM/UA does not have the right to transfer distribution rights to Warner Bros. under the pending Pathe acquisition."The underlying claim for which the MGM defendants seek coverage, Danjaq S.A. v. MGM/UA Communications, et al. (Case No. BC 021495), was filed on February 14, 1991 against MGM, Kerkorian, and Barbakow, among others. Danjaq, a producer of motion pictures, alleged that the MGM defendants engaged in fraudulent leveraged buy-out transactions in connection with the merger of MGM and Pathe Communications. These transactions allegedly violated various agreements between MGM and Danjaq. The Danjaq claim was not reported to Continental when it was filed. As described above, however, MGM had advised Continental of the potential for claims based on the same facts that gave rise to the Danjaq suit.
 
 
 4
 MGM notified Continental of the Danjaq claim on August 26, 1992, stating that MGM had provided Continental with notice of the potential for the Danjaq claim in the September 20, 1990 "laundry list" of potential claims. MGM anticipated in the August 26 letter that "[Continental] will ultimately owe MGM contribution toward defense and settlement costs" of the Danjaq suit. Kerkorian and Barbakow likewise made a demand on Continental for reimbursement of the defense and settlement expenses incurred in the Danjaq suit.
 
 
 5
 Continental filed an action for declaratory relief. Continental's amended complaint alleged that the MGM defendants failed to comply with the notice provisions of the liability policy. The MGM defendants filed a motion for summary judgment which the district court granted.
 
 II
 
 6
 Continental contends that the district court's grant of summary judgment in favor of the MGM defendants misconstrues the notice provisions of the insurance contract. We review de novo the district court's grant of summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). The standard used by the trial court under Federal Rule of Civil Procedure 56(c) governs our review. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issue of material fact exists and whether the district court properly applied the relevant substantive law. Id.
 
 
 7
 No factual disputes exist in this case. The parties agree as to the content of the insuring agreement; they differ only as to its interpretation. Likewise, the parties agree as to the content of the notice provided but disagree as to its sufficiency. Because there are no genuine issues of material fact in dispute, summary judgment is proper.
 
 
 8
 * The first issue raised by Continental's appeal concerns the interpretation of the notice provisions of the contract. We must determine whether the contract requires notice of a filing of a claim during the policy or discovery period when notice of the wrongful act which led to that claim was given within the policy or discovery period.
 
 
 9
 In a diversity case we apply state substantive law. California insurance law applies here. State Farm Mut. Auto. Ins. Co. v. Khoe, 884 F.2d 401, 405 (9th Cir.1989). If the contract language in an insuring agreement is clear, we apply the provisions according to that meaning. Continental Insurance Co. v. Superior Court, 37 Cal.App.4th 69, 81-2, 43 Cal.Rptr.2d 374 (1995). The language in the MGM Directors' and Officers' Liability policy clearly states that notice of a wrongful act potentially resulting in a claim against MGM or its directors and officers is treated as a claim made. The policy does not require that notice be given a second time when the resulting suit is filed.
 
 
 10
 Section 7(B) of the insuring agreement unambiguously requires that notice of a claim be given within the policy or discovery periods. Section 7(B) reads, in relevant part,
 
 
 11
 If during the policy period or discovery period ... [a] claim ... is made against the insureds, ... the insureds shall as a condition precedent to the insured's rights under this policy give to the company notice within the policy period or during the discovery period ...
 
 
 12
 Section 7(C) expands the definition of a claim made to include notice of a wrongful act potentially resulting in liability:
 
 
 13
 If during the policy period or the discovery period ...
 
 
 14
 (ii) the insureds shall become aware of any wrongful act which may subsequently give rise to a claim being made against the insureds .... and shall ... give written notice to [Continental], ... then any claim which may subsequently be made against the insureds arising out of such wrongful act shall for the purpose of this policy be treated as a claim made within the period of this policy.
 
 
 15
 This section incorporates notice of "wrongful acts" into the definition of a "claim made."
 
 
 16
 Continental argues that section 7(B) requires notice of the claim during the policy or discovery period despite MGM's notice of a wrongful act pursuant to section 7(C). The plain language of Section 7(C) is contrary to this interpretation, however. Section 7(C) provides that notice of a wrongful act that might result in a claim is treated as a claim made. Under this section Continental considers the claim to have been made and notice given when the insured notifies Continental of the wrongful act. Nothing in the policy indicates that notice must be given a second time in order to invoke coverage.
 
 
 17
 Interpreting virtually identical notice provisions, we stated in Winkler v. National Union Fire Insurance Co., 930 F.2d 1364, 1366-67 (9th Cir.1991) (applying California law), that section 7(C) would be redundant if it encompassed only claims actually asserted during the policy period. In Winkler, we clearly articulated that sections 7(b) and 7(c) constituted separate notice provisions. In that case, the insureds failed to provide notice of any wrongful acts during the policy period but argued that the occurrence of these acts sufficed to invoke coverage under a claims made policy. We rejected that argument, but concluded that, had the insureds given notice, they "had a clear right under the policy to seek coverage for these inchoate claims." Id. at 1367. Thus sections 7(B) and 7(C) provide alternative rather than sequential notice requirements.
 
 
 18
 Continental argues unpersuasively that Helfand v. National Union Fire Ins. Co., 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (1 Dist.1992), cert. denied, 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993), controls this case. The Helfand court, interpreting very similar provisions in the context of loss allocation, found these provisions ambiguous. The court stated that a provision analogous to Section 7(C) applied only to claims filed after the expiration of the policy period. The section was interpreted in that way in order to resolve the ambiguity in favor of coverage. The issue presented here involves the notice requirements of the two sections, distinguishing it from Helfand. The notice aspects of section 7 are not ambiguous. The contract does not, by its terms, require notice of a claim made once notice of a wrongful act has been given.
 
 
 19
 Our conclusion is contrary to that drawn by the Seventh Circuit in a case discussing similar policy language. Harbor Insurance Co. v. Continental Bank Corp., 922 F.2d 357 (7th Cir.1990). The Seventh Circuit, in a opinion by Judge Posner, held that "occurrence notice" and "claim notice" are sequential rather than alternative requirements. The court stated, "The insurer wants to know whether there is a possibility that it will be receiving a claim after the policy period, but of course it also wants to receive notice of that claim if and when it materializes." Id. at 369. Continental obviously wants to receive notice, and that is not an unreasonable expectation, but the contract in this case does not explicitly require this second notice. Rather, the contract treats "occurrence" notice as a claim made; it is an alternative to claim notice.
 
 
 20
 By the language of the contract, the definition of a "claim" is expanded to include wrongful acts potentially resulting in litigation as long as the insurer is notified of these possibilities during either the policy or discovery period. This is a reasonable conclusion in light of the fact that the policy does not confer a duty to defend upon the insurer; there is merely a duty to indemnify. Continental does not argue that it should have been allowed to participate in the disposition of the underlying case. The purpose of the notice provision is to allow Continental to assess accurately its potential liabilities in any given year. Notice of claims or potential claims is all that is required by the insuring agreement.
 
 B
 
 21
 The second question we must resolve concerns the sufficiency of MGM's notice to Continental. Under the contract, notice of a wrongful act invokes coverage as long as that notice is sufficiently specific. Under Section 7(D), the notice must state: (1) the date or dates when the wrongful act occurred and (2) the specific nature of the wrongful act. MGM's notice satisfies these requirements.
 
 
 22
 Under cover of a letter referencing the directors and officers liability policy, MGM forwarded a number of documents to Continental indicating the dates and the nature of the wrongful acts that MGM believed might result in claims against MGM or its directors and officers. The MGM defendants do not assert that they notified Continental of the filing of Danjaq's claim during the currency of the policy period or the discovery period. Rather, they contend that the notice of the related suits and the indication that other producers might bring claims with respect to the Pathe merger constitute sufficient notice. Under section 7(C) this notice should be treated as a claim made for the purposes of coverage.
 
 
 23
 In analyzing the same issue under a virtually identical policy, the California Court of Appeals held that notice indicating "imprudence, negligence and mismanagement as possible allegations which were likely, if not anticipated, in connection with acquisition ... of certain corporate subsidiaries" constituted valid notice. Continental Insurance Co. v. Superior Court, 37 Cal.App.4th 69, 80, 43 Cal.Rptr.2d 374. In that case the insured provided all the information available during the policy period. The case here differs in that the MGM defendants could have supplied Continental with additional information. The Danjaq suit was filed within the discovery period, but MGM and the other defendants did not inform Continental of this filing.
 
 
 24
 As discussed above in section II(A), this failure does not defeat the MGM defendants' right to recover because the notice of the potential claim constitutes a "claim made" according to section 7(C) of the policy. At issue is whether the information MGM provided to Continental during the policy and discovery periods was sufficiently specific under section 7(D). We hold that it was.
 
 
 25
 On September 20, 1990, MGM sent Continental a list of pending or potential litigation in order "to put [Continental] on notice that claims involving one or more of [MGM's] Directors and Officers may rise out of the legal actions or claims shown thereon." MGM sent a copy of the Grimaldi complaint, which sought relief on behalf of a class of producers with respect to the MGM-Pathe merger. This complaint set forth the details of the merger and some of its potential consequences. MGM also stated in the "laundry list" of potential claims that other producers might contend that the transfer of distribution rights pursuant to the Pathe merger was improper.
 
 
 26
 The combination of these documents provided Continental with all the information required by the notice provisions of the insurance contract. Additionally, Continental should be held to the language of endorsement 7, which states:
 
 
 27
 ... any series of continuous, repeated, connected, related or interrelated wrongful acts shall for the purposes of the application of this insurance constitute a single wrongful act which shall be deemed to have taken place at the date of the initial wrongful act
 
 
 28
 If the initial wrongful act is the MGM-Pathe merger and the related distribution agreements, Continental had notice of these wrongful acts from a variety of sources, including the Grimaldi complaint and several entries on the "laundry list." They also had explicit notice from MGM that this merger agreement might result in claims against MGM and the directors and officers of MGM.
 
 
 29
 For the purposes of the insurance policy, MGM provided sufficient notice to Continental. Continental knew of the transaction that was expected to give rise to claims against MGM and its directors and officers, and this notice was sufficiently specific to satisfy the terms of the policy.
 
 III
 
 30
 Accordingly, we affirm the district court's grant of summary judgment in favor of defendants MGM, Kerkorian and Barbakow.
 
 
 31
 AFFIRMED.
 
 
 32
 TASHIMA, Circuit Judge, dissenting.
 
 
 33
 I disagree with the majority's holding in Part II.A that Sections 7(B) and 7(C) are alternative notice provisions. This is not the evident purpose of including both of them in the policy, and is not a reasonable interpretation of the insuring agreement. We should strive to give meaning to both provisions. "The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Helfand v. National Union Fire Ins. Co., 10 Cal.App.4th 869, 887, 13 Cal.Rptr.2d 295, 304 (1992)(emphasis in original)(quoting Cal.Civ.Code § 1641). In a claims made policy, like the one before us, such a reasonable interpretation can, and should, be given to them.
 
 
 34
 That is, indeed, what the Seventh Circuit did in a case involving similar policy provisions. It characterized the Section 7(C) type of notice as "occurrence notice" and the Section 7(B) type of notice as "claim notice." Each serves a different purpose. Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 369 (7th Cir.1990)(construing Illinois law). It held that these two notice requirements were sequential, rather than alternative, stating:
 
 
 35
 Continental [the insured] failed to comply with an explicit condition precedent and is therefore barred from recovering on its claim. Its argument that occurrence notice and claim notice are alternative rather than sequential requirements is contrary to the language and evident purpose of the requirements. The insurer wants to know whether there is a possibility that it will be receiving a claim after the policy period, but of course it also wants to receive notice of that claim when and if it materializes.
 
 
 36
 Id. (emphasis added). This is the reasonable meaning of the two notice provisions.
 
 
 37
 Because this is a claims made policy, the occurrence notice provision of Section 7(C) is a timing provision. It serves only to bring claims made after the policy and discovery periods have expired within the policy's coverage, as long as those post-policy-period claims arise out of properly noticed wrongful acts occurring during the coverage period. The majority, however, misconstrues this section in two ways. First, although notice of the occurrence of a wrongful act under Section 7(C) brings post-policy claims within coverage, it does not obviate claim notice under Section 7(B). Second, Section 7(C) does not apply to third-party claims made against the insured within the policy period.
 
 
 38
 The majority's leap of logic is its conclusion that, "[u]nder this section [7(C) ] Continental considers the claim to have been made and notice given when the insured notifies Continental of the wrongful act." (Emphasis added.) If, by the emphasized phrase, "and notice given," the majority means claim notice, nowhere in Section 7(C) does it provide that occurrence notice is the same as claim notice. All that the section provides is that such subsequent claims shall be "treated as" claims made. And Section 7(B) is unambiguous that a condition precedent to coverage for all claims made is notice of the claim.
 
 
 39
 The majority then goes on to assert that, "Nothing in the policy indicates that notice must be given a second time in order to invoke coverage." It would be more accurate to state that nothing in the policy waives the giving of claim notice with respect to a subsequently-made claim which is treated as a claim made within the policy period by Section 7(C).
 
 
 40
 To repeat, while it may be true that Section 7(C) provides that claims made subsequent to the occurrence notice "shall for the purpose of this policy be treated as a claim made within the period of this policy," neither that section nor any other provision of the policy provides that such a claim is excepted from the claim notice requirement of Section 7(B). In fact, Section 7(B) is unambiguous that claim notice is a condition precedent to coverage for all claims made under the policy.
 
 
 41
 Further, the majority's construction of Section 7(C) to apply to third-party claims made against the insured during the policy period is incongruous with the plain language of Section 7(C). Section 7(C) acts to treat a claim made against the insured subsequent to a wrongful act as a "claim made within the period of [the] policy." Yet, this language is superfluous where the claim was already made within the policy period. I decline to read the insuring agreement to produce this unnecessary result. Instead, Section 7(C) should apply only to bring claims made outside of the period of the policy within the policy, i.e., as a timing provision.
 
 
 42
 The majority's strained reading of Section 7(C) was squarely rejected by the California Court of Appeal in Helfand, which held:[T]he concept of subsequent claims developed in clause 7(c) for all practical purposes refers only to claims made after the policy expires, and, thus, this provision is inapplicable to claims made during the policy period.... This construction is in keeping with the purpose of the coverage tail, namely to ensure that losses arising from certain claims made after the policy expires will be treated as covered losses under the policy. Moreover, if clause 7(c) were read as encompassing all claims made after a comprehensive occurrence notice--whether made before or after expiration of the policy--it would be meaningless and redundant. A claim made during the policy period is "made during the currency" of the policy period and there is no need to treat it specially.
 
 
 43
 Helfand, 10 Cal.App.4th at 891-92, 13 Cal.Rptr.2d at 307 (internal citation omitted)(emphasis in original).
 
 
 44
 The majority attempts to distinguish Helfand by asserting that the court in that case limited clause 7(c) to claims made after the policy period expired only to resolve an ambiguity in favor of the insured. However, as the passage quoted above makes clear, Helfand also recognized that this reading was dictated by the evident purpose of 7(c), and was necessary to avoid rendering the clause meaningless. Further, the central source of ambiguity in Helfand--whether claims arising out of reported wrongful acts should be allocated to the loss limit for a single policy year or to the total limit for the entire term of the policy--is not presented here. Indeed, Helfand notes that "the policy, taken as a whole, is not ambiguous," and holds that claim notice must be given. Id. at 886-87, 13 Cal.Rptr.2d at 303-04.
 
 
 45
 The majority's reliance on Winkler v. National Union Fire Ins. Co., 930 F.2d 1364 (9th Cir.1991), is also misplaced.[1] For rather than supporting the conclusion that Sections 7(B) and 7(C) provide alternative notice, Winkler is entirely consistent with my reading of the policy.
 
 
 46
 Like the case at bench, in Winkler, the insured learned of its potential liability for a wrongful act during the policy period. Id. at 1366-67. However, the majority conveniently ignores the fact that, unlike this case, in Winkler, a third-party claim was not made against the insured until after the policy had expired. Id. at 1366. Thus, Winkler was exactly the kind of situation Section 7(C) was meant to address: post-policy-period claims brought within the policy's coverage by notice of a wrongful act during the policy period. It was for this reason that we stated that the insured "had a clear right under the policy to seek coverage for these inchoate claims." Id. at 1367. We denied coverage in Winkler because the insured failed to provide occurrence notice of the wrongful acts, as required by Section 7(C). But nothing in Winkler supports the majority's novel assertion that claims made during the policy period are controlled by an "alternative" notice provision in Section 7(C). Such claims are covered solely by Section 7(B).
 
 
 47
 Finally, the majority makes only a weak attempt to distinguish Harbor Ins. Co., and it is unpersuasive. It denigrates the value of claim notice to the carrier because it "merely" had the duty to indemnify and no duty to defend. But, surely, as Judge Posner observed, the carrier "also wants to receive notice of that claim when and if it materializes." Harbor Ins. Co., 922 F.2d at 369. Claim notice is at the heart of a claims made policy because it helps to provide "certainty in gauging potential liability which in turn leads to more accurate calculation of reserves and premiums." Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co., 44 Cal.App.4th 1297, 1304, 52 Cal.Rptr.2d 268, 272 (1996) (quoting Helfand, 10 Cal.App.4th at 888, 13 Cal.Rptr.2d at 305). In addition, while Continental has no duty to defend, the majority ignores the fact that under Section 6 of the policy, it has the right to consent to all defense costs and settlements made by the insured. Without notice of the actual claim, this right is meaningless; Continental cannot accurately assess the reasonableness of the insured's expenses or prepare itself to indemnify.
 
 
 48
 Because the majority, like the district court, misconstrues the sequential notice provisions of the claims made policy, I respectfully dissent.
 
 
 
 [1]
 Continental is the successor in interest to Harbor Insurance Company, the actual issuer of the D & O policy involved in this case. Because this succession is not relevant to the issues raised in the appeal, we will treat Continental as the insurer
 
 
 [1]
 Ironically, MGM itself understood that Winkler actually undermines its position, and argued that Winkler is inapplicable. Appellee's Br. at 26