Steven STAUDT and Tracy Staudt, Plaintiffs,

v.

**ARTIFEX LTD. and Admiral Insurance Company, Defendants.**

No. 96–C–533.

United States District Court, E.D. Wisconsin.

Aug. 10, 1998.

Ronald S. Goldser, Keelyn M. Friesen, Zimmerman & Reed, Minneapolis, MN, for Steven Staudt, Tracy Staudt.

Timothy J. Strattner, Schellinger & Doyle, S.C., Brookfield, WI, for Admiral Ins. Co.

Janice Merrill, Artifex Ltd., Maitland, FL, for Artifex Ltd.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiffs, Steven and Tracy Staudt, who are husband and wife, filed this action on May 6, 1996, against Artifex, Ltd., the manufacturer of an allegedly defective bone screw device (or "spinal fixation" device) which was implanted into his spine and the insurer of Artifex, Admiral Insurance Company ["Admiral"]. This hardware is designed to be implanted in a patient's back by a doctor in performing corrective spinal surgery.

Presently before the court are two motions for summary judgment: (1) defendants' motion for summary judgment "Dismissing All Claims Against Defendants"; and (2) Admiral's motion for summary judgment for "Claims–Made Coverage." The motion for summary judgment dismissing all claims will be granted in part and denied in part. Admiral's motion for summary judgment "for claims-made coverage" will be granted.

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues of material facts and the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In order to succeed on a motion for summary judgment, the movant must show the following: (1) no genuine issue of material fact exists; and (2) its entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judg-

ment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Patel v. Allstate Ins. Co., 105 F.3d 365, 370 (7th Cir.1997).

██ As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. A dispute over such facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Pursuant to the standard summary judgment procedure, the movant identifies for the court, "with reference to the record and to the law," the portions of the record that show that no genuine issues of material fact exist. See Logan v. Commercial Union Ins. Co., 96 F.3d 971, 979 (7th Cir.1996). Once the movant satisfies this step, the non-movant must produce evidence beyond the pleadings to show that there are genuine issues of material fact in order to survive a motion for summary judgment. Celotex Corp., 477 U.S. at 324, 106 S.Ct. 2548. Where the movant is the party who does not bear the burden of proof at trial, it "need only point to the insufficiency of the plaintiff's evidence to shift the burden to the plaintiff to raise genuine issues of fact as to each claim by substantial evidence." DeBraska v. City of Milwaukee, 11 F.Supp.2d 1020, 1025 (E.D. Wis. June 19, 1998), quoting First Pac. Networks, Inc. v. Atlantic Mut. Ins. Co., 891 F.Supp. 510, 513 (N.D.Cal.1995). If the evidence presented by the opposing party is "merely colorable," or is not "significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249–250, 106 S.Ct. 2505.

### II. MOTION FOR SUMMARY JUDGMENT DISMISSING ALL OF THE CLAIMS

#### A. Undisputed Facts

As required under Local Rule 6.05(a), the defendants included with their motion for summary judgment proposed findings of fact which they believed constituted the factual propositions upon which there is no genuine issue of material fact. The plaintiffs did not file a response to the defendants' proposed

findings. However, the plaintiffs did file additional proposed findings of fact which are also allegedly undisputed. *See* Local Rule 6.05(b)(2) (Permits the party opposing a motion for summary judgment to present additional propositions deemed to be relevant to the motion.) The defendants did not file a response to the plaintiffs' additional proposed findings although they are permitted to do so under Local Rule 6.05(c).

■ Upon deciding a motion for summary judgment, the court will conclude that there is no genuine issue of material fact as to any proposed finding of fact to which no proper response is set out. *Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir.1993), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); Local Rule 6.05(d). Because neither party filed a response to the other's proposed factual assertions and because none of the respective factual propositions contradict each other, I conclude that the factual assertions proposed by the respective parties are admitted.

On November 4, 1991, Dr. Sanford Larson performed spinal fusion surgery on the plaintiff, Steven Staudt, at Froedtert Memorial Lutheran Hospital ["Froedtert"] in Wauwatosa, Wisconsin. (Defendants' Proposed Findings ["Defendants' P.F."] ¶ 2; Staudt Proposed Findings ["Staudt P.F."] ¶ 2.) During the surgery, Dr. Larson implanted a spinal fixation device into Mr. Staudt which was manufactured by Artifex. (Defendants' P.F. ¶ 3; Staudt P.F. ¶ 3.) Mr. Staudt was not informed that any instrumentation would be implanted during the surgery. (Staudt P.F. ¶ 3.) At no time prior to the surgery did Mr. Staudt have any contact with any person employed by or representing defendant, Artifex, nor did Mr. Staudt ever see any advertising or promotional material concerning the Artifex "spinal fixation device" utilized in his surgery. (Defendants' P.F. ¶ 4.) No representations were made to the plaintiff about the spinal fixation device which would be used in his surgery. (Defendants' P.F. ¶ 5.)

In June 1992, Mr. Staudt slipped and fell while exiting a bait shop, breaking a screw and damaging the hardware in his back. (Defendants' P.F. ¶ 6; Staudt P.F. ¶ 4.) Mr.

Staudt was transported to Froedtert where, upon viewing his x-ray, he knew that his spinal fixation device was broken or damaged. (Defendants' P.F. ¶ 7.) Mr. Staudt was not given any explanation by any doctor on the cause of his pain after the fall. (Staudt P.F. ¶ 4.) Dr. Larson did not provide Mr. Staudt with the results from the diagnostics tests, and Dr. Larson did not recommend any surgery. (Id.) Mr. Staudt did not understand the cause of his pain and no physician, including Dr. Larson, would opine that the pain was caused by the hardware. (Id.) In fact, Dr. Larson testified that the hardware was not the cause of his pain. (Staudt P.F. ¶ 5.)

The Artifex spinal fixation device was first manufactured in an engineer's garage and replicated the pedicle screw internal spinal fixation system device of another manufacturer—AcroMed. (Staudt P .F. ¶ 6.) The president of Artifex, Greg Baker, knew that the spinal fixation device he was manufacturing required clearance by the Food and Drug Administration, but he ignored the federal requirements on labeling and marketing. (Staudt P.F. ¶ 7.) Artifex conducted limited testing on its spinal fixation device but did not inform the surgeons of this fact. (Id.)

Surgeons who utilized this device assumed that thorough testing had been done on the Artifex spinal fixation device and relied on this belief. (Id.) Specifically, Dr. Larson assumed that testing had been completed on the spinal fixation device and relied on the representations of Artifex that such testing had been done. (Staudt P.F. 11.) Prior to the first implantation of the Artifex spinal fixation device in human beings, no controlled experimental studies, biological testing, biochemical testing or biomechanical testing had been done on the device. (Staudt P.F. ¶ 9.) Only one attempted cadaver implant was undertaken before the first patient implant was sold. (Id.)

The president of Artifex admits that the devices break, yet Artifex did not publish any warnings of the risks of the device. (Staudt P.F. ¶ 10.) The spinal fixation device manufactured by Artifex was shipped in bulk to Froedtert which received more than 100 screws, 30 rods, 20 clamps, 44 nuts and other

components at one time. (Staudt P.F. ¶ 12.) According to Dr. Larson, the spinal fixation device was not manufactured especially for his use. (Staudt P.F. ¶ 13.) Artifex admits that it did not disclose the risks inherent in the spinal fixation device to surgeons nor did it disclose the fact that only limited testing had been done on the device. (Staudt P.F. ¶ 15.)

In the complaint, which was filed on May 6, 1996, the plaintiffs allege eight causes of action: (1) count 1—strict liability resulting in bodily injury; (2) count 2—negligence resulting in bodily injury; (3) count 3—breach of implied and express warranty; (4) count 4—intentional fraud; (5) count 5—breach of Wis. Stats. § 100.18; (6) count 6—intentional concealment of true facts concerning the internal spinal fixation devices; (7) count 7—intentional infliction of emotional distress; (8) count 8—loss of society and companionship (consortium) on the part of Mrs. Staudt. (Complaint.)

*B. Law and Analysis*

 *1. Counts 1 and 2: Strict Liability and Negligence*

The defendants contend that counts 1 and 2 for strict liability and negligence should be dismissed because they are barred by the applicable statute of limitations. The plaintiffs argue that summary judgment is not warranted on this ground because a genuine issue of material fact exists as to whether their claims were filed within the statutory period. The plaintiffs contend that public policy and notions of justice mandate the timeliness of Mr. Staudt's claims and that class action law tolls the statutory period during the pendency of the class action.

The parties agree that because this is a diversity case, Wisconsin law governing the relevant statute of limitations applies. *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Wisconsin law, actions for strict liability and negligence resulting in bodily injury "shall be commenced within 3 years or be barred."

Wis. Stats. § 893.54. Thus, the question is when the plaintiffs' claims accrued.

The defendants assert that the plaintiffs' claims accrued on the date of Mr. Staudt's injury—June 25 or 26, 1992. The plaintiffs, on the other hand, contend that their claims accrued in December of 1993, when Mr. Staudt watched a television documentary which revealed that the cause of his injury was the Artifex spinal fixation device.

Wisconsin courts have adopted the discovery rule in determining when a personal injury claim has accrued. Under this rule, "the statute of limitations should not commence to run until the plaintiff discovers, or in the exercise of reasonable diligence, should have discovered his or her injury and that the injury may have been caused by the defendant's conduct." *Doe v. Archdiocese of Milwaukee*, 211 Wis.2d 312, 335, 565 N.W.2d 94 (1997), citing *Borello v. U.S. Oil Co.*, 130 Wis.2d 397, 388 N.W.2d 140 (1986). "Plaintiffs have a duty to inquire into the injury that results from tortious activity." *Id.*

The question of when a plaintiff discovered his injuries or should have discovered his injuries and whether the plaintiff exercised reasonable diligence are questions of fact for the fact finder. *See Id.* at 341, 388 N.W.2d 140, citing *Spitler v. Dean*, 148 Wis.2d 630, 638, 436 N.W.2d 308 (1989); *Hammer v. Hammer*, 142 Wis.2d 257, 268, 418 N.W.2d 23 (Ct.App.1987). However, "when the facts and reasonable inferences that can be drawn from them are undisputed, whether a plaintiff has exercised reasonable diligence in discovering his or her cause of action is a question of law." *Doe*, 211 Wis.2d at 341, 565 N.W.2d 94.

In my opinion, the plaintiffs have failed to produce competent evidence upon which a jury could reasonably find that he discovered the cause of his injury in December of 1993 when he watched the television documentary on "20/20" about pedicle screw implants. The only evidence offered by the plaintiffs to support this assertion is a form he filled out in connection with proceedings in the multidistrict litigation district. (Friesen Aff. Ex. Q.) Question 17 of that form asks how the plaintiff "became aware that there

may be a cause/effect relationship between [the plaintiff's] present physical complaints and the rods or plates and screws implanted into [his] back." The plaintiff responded to this question with "watch 20/20." The form asked the plaintiff to identify the manufacturer of the device of which he complains, and the plaintiff responded "Cotrel Dubousset" *not* Artifex. According to the testimony of Mr. Staudt's physician, Dr. Larson, "Cotrel–Dubousset" was the manufacturer of the second device that was placed in Mr. Staudt's spine *after* the Artifex device was removed.

Because the evidence pointed to by the plaintiff in support for his contention that his claim against Artifex accrued in December of 1993 relates to a different pedicle screw manufacturer, I am unable to conclude that such evidence is relevant to the instant action against Artifex.

■ Nevertheless, I find that a genuine issue of material fact exists as to whether the plaintiffs' claims accrued in June of 1992 as asserted by the defendants. The supreme court of Wisconsin has held that in determining when a person has "discovered" his injury and its cause, an "unsubstantiated lay belief is not sufficient for discovery to occur." *Clark v. Erdmann*, 161 Wis.2d 428, 448, 468 N.W.2d 18 (1991). Instead, a plaintiff has discovered his injury and its cause when the plaintiff has "information that would constitute the basis for an *objective* belief of his injury and cause." *Id.* (Emphasis added.)

The decision of the supreme court of Wisconsin in *Borello* is instructive on this issue. In *Borello*, a plaintiff had been injured by a faulty furnace more than three years before filing her complaint. Almost contemporaneous to the installation of the furnace, Ms. Borello suspected that her symptoms were caused by the furnace. Examination of the furnace did not confirm her suspicions. For over three years she was repeatedly told by doctors that her symptoms could not be caused by the furnace and other diagnoses were made attributing the origin of her injuries to other factors. It was later learned through a different physician—a Dr. Fishburn—that the faulty furnace was, in fact, the cause of her injury. The supreme court of Wisconsin held that the Ms. Borello's claim did not accrue until the nature of her illness was confirmed by Dr. Fishburn. *Borello*, 130 Wis.2d at 409, 388 N.W.2d 140. According to the court, Ms. Borello did not have a basis for *objectively* determining the causal connection between her injury and the furnace until Dr. Fishburn confirmed her suspicions. *Id.* at 414, 388 N.W.2d 140.

■ It is clear in the instant case that, at a minimum, Mr. Staudt had a subjective belief as to his injury and its cause on the date of his accident in June 1992. However, a genuine issue of material fact exists as to whether an "objective belief as to [his] injury and its cause" also existed on this date. *Clark*, 161 Wis.2d at 448, 468 N.W.2d 18. Like the situation in *Borello*, Mr. Staudt's own physician did not attribute the broken screw to Mr. Staudt's injury and he offered other diagnoses for his pain. (Staudt Aff. at ¶¶ 11–12.) Indeed, even after the surgery in March of 1993 to remove the device, Dr. Larson opined that the device was not the cause of Mr. Staudt's problems. (Id. at 14.)

■ Admittedly, an "objective belief" sufficient to constitute discovery does not necessarily require a plaintiff to be officially informed by an expert of his injury, its cause, and the relation between the injury and its cause. *Id.* at 448, 468 N.W.2d 18. However, I believe that the plaintiffs have presented sufficient evidence upon which a jury could determine that Mr. Staudt did not have information before him as of June of 1992 to form an objective belief as to the cause of his injury. Mr. Staudt claims that his physician attributed the plaintiff's pain to other factors on numerous occasions after his injury. Whether a reasonable person would have held an objective belief as to his injury and its cause under these circumstances is a factual question better left to a jury at trial and not to a court on summary judgment. Therefore, this portion of the defendants' motion for summary judgment will be denied.

### 2. Count 3: Breach of Implied and Express Warranties

The defendants argue that summary judgment dismissing the plaintiffs' warranty claims is required because the claims were

dismissed by Judge Louis Bechtel in the multidistrict litigation pursuant to Pretrial Order No. 651. In addition, they argue that they are entitled to summary judgment on these claims because the plaintiffs have failed to prove that privity existed between the parties which is an essential element for warranty claims under Wisconsin law.

■ In response, the plaintiffs state that they "will not dispute the application of Judge Bechtel's ruling in Pre-trial Order No. 651 dismissing express warranty claims." Thus, the plaintiffs' express warranty claims in count 3 will be summarily dismissed. However, because the plaintiffs are silent as to the effect of Judge Bechtel's order on their implied warranty claims, the court will address the defendants' alternative argument for summary judgment on such claim.

■ In a claim based on implied warranty, there is a requirement of privity of contract. *City of La Crosse v. Schubert, Schroeder & Assoc., Inc.*, 72 Wis.2d 38, 41, 240 N.W.2d 124 (1976), *rev'd on other grounds by Daanen & Janssen, Inc. v. Cedarapids,* Inc., 216 Wis.2d 394, 573 N.W.2d 842 (1998). Privity of contract is the relationship that exists between two contracting parties. *Id.* at 41, 240 N.W.2d 124. Here, the undisputed facts show that the plaintiffs never had a relationship, or any contact whatsoever, with Artifex or any person employed by or representing Artifex. The plaintiffs acknowledge that they have never seen any advertising or promotional material concerning the Artifex "spinal fixation device" which was utilized in Mr. Staudt's surgery. The plaintiffs point to no evidence upon which a jury could conclude that privity of contract existed between the plaintiffs and Artifex. Thus, the plaintiffs have failed to satisfy an essential element of their implied warranty claim.

Accordingly, the defendants are entitled to summary judgment dismissing the plaintiffs' express and implied warranty claims, with prejudice.

### 3. County 4: Fraud

The plaintiffs' complaint alleges that Artifex is liable for fraud under two theories:

fraudulent misrepresentation and fraudulent concealment. Specifically, the plaintiffs allege:

51 ... Artifex utilized the advertising media to urge the use of internal spinal fixation and intentionally failed to warn ... the general public, including plaintiff, ... concerning lack of adequate testing of the safety of the implants, and likewise, failed to report any known adverse effects of the internal spinal fixation devices to the general public, including the plaintiff, ....

52. Artifex ... knew that representations made regarding the internal spinal fixation devices were false and misleading and were made with the intention to defraud ... the general public into believing that these internal spinal fixation devices were safe for human uses.

53. The plaintiff, ... relied on these claims and representations in good faith in electing to undergo surgical implantation of internal spinal fixation devices into his body. The claims were communicated to plaintiff, Steven W. Staudt, through his physician. Alternatively, defendant fraudulently concealed the status of these devices from plaintiff, Steven W. Staudt.

(Complaint, ¶¶ 51–53.)

■ The elements of a claim of fraudulent misrepresentation are (1) false representation, (2) intent to defraud, and (3) reliance upon the representation resulting in damage. *Goerke v. Vojvodich,* 67 Wis.2d 102, 226 N.W.2d 211 (1975). The elements of fraudulent concealment are similar to those of fraudulent misrepresentation. However, in lieu of establishing that the other party has made fraudulent misrepresentations, the plaintiff must show that the party failed to disclose a material fact. *See Ollerman v. O'Rourke Co., Inc.,* 94 Wis.2d 17, 26 & 43 n. 26, 288 N.W.2d 95 (1980).

■ The defendants argue that they are entitled to summary judgment on these fraud claims because Mr. Staudt is unable to prove that he relied upon the alleged misrepresentations as to testing of the spinal devices or upon the defendants' alleged silence as to the lack of testing on the devices. It is undisputed that Mr. Staudt was not informed by his

surgeon or by any other means, prior to surgery, that Artifex hardware was going to be implanted in his back during the spinal fusion surgery in November 1991. It is also undisputed that the plaintiff saw no advertising or any other representations regarding the Artifex device prior to surgery. Indeed, Mr. Staudt points to nothing in the record to show that he in fact relied on any misrepresentation by Artifex or upon Artifex's silence regarding the testing of its device.

The plaintiffs assert that reliance is presumed where a party claims fraudulent concealment. However, the plaintiffs cite no Wisconsin case law to support this proposition. The plaintiffs refer to *Kearney and Trecker Corp. v. Milwaukee Boiler Manufacturing Co.,* 554 F.Supp. 53 (E.D.Wis.1982), which is not applicable as it involved the interpretation of *federal* securities, law not a claim for fraudulent concealment under Wisconsin law.

Therefore, because the plaintiffs have failed to point to any evidence to establish that Mr. Staudt relied on the defendants' alleged fraudulent misrepresentations or omissions—an essential element of their claims for fraud under Wisconsin law—their fraud claims in count 4 will be dismissed, with prejudice.

### 4. Count 5: Violation of Wis. Stats. § 100.18

The plaintiffs have also alleged a violation of Wis. Stats. § 100.18 on the part of the defendants. This statute prevents fraudulent representations in connection with the marketing of goods and services. It prohibits persons from, among other things, intentionally inducing the public to purchase merchandise either directly or indirectly, by an "announcement, statement, or representation contain[ing] any assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stats. § 100.18(1). The defendants · argue that they are entitled to summary judgment on this claim because it is barred under the applicable statute of limitations.

The statute of limitations for claims under Wis. Stats. § 100.18 is set forth in § 100.18(11)(b)3 and provides: "No action

may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." The defendants contend that the three year limitations period began to run no later than the implantation of the hardware into Mr. Staudt's back on November 4, 1991, since he would have "purchased" the Artifex merchandise at that time. According to the defendants, only fraudulent misrepresentations which were made before the surgery can be said to have induced such purchase.

The plaintiffs do not dispute that the alleged misrepresentations or deceptive practices which form the basis for their claim under § 100.18 occurred before Mr. Staudt's surgery in November 1991. However, they contend that the discovery rule applies in this case such that Mr. Staudt's claim under § 100.18 cannot be said to have "accrued" until he discovered his injury and the role of Artifex in causing his injury.

■■■ Mr. Staudt's argument ignores controlling case law which holds that the discovery rule is inapplicable to the "statute of repose" set forth in § 100.18(11)(b)3. *See Castellani v. Bailey,* 218 Wis.2d 245, 258, 578 N.W.2d 166 (1998); *Skrupky v. Elbert,* 189 Wis.2d 31, 54–55, 526 N.W.2d 264 (Ct.App. 1994). The supreme court of Wisconsin recently ruled that the discovery rule does not apply to statutes of repose like that in Wis. Stats. § 100.18(11)(b)3 pursuant to which the limitation period begins to run as of the date of the defendant's conduct. *Castellani,* 218 Wis.2d at 258–260, 578 N.W.2d 166.

In support for their contention that the discovery rule applies, the plaintiffs rely on the case of *Kuiper v. American Cyanamid Co.,* 913 F.Supp. 1236 (E.D.Wis.1996), *aff'd on other grounds,* 131 F.3d 656 (7th Cir. 1997), in which another branch of this court held that Wisconsin's discovery rule applies to a claim under § 100.18 because such a claim is an action sounding in tort. In my opinion, the district court decision and the decision affirming it on other grounds are not controlling insofar as they were decided before the supreme court of Wisconsin issued its decision in *Castellani.*

I find that the undisputed facts show that the misrepresentations forming the basis for the false advertising claim under § 100.18 occurred no later than November 4, 1991. As a result, Mr. Staudt was obligated to commence an action under § 100.18 based on those misrepresentation within three years from November 4, 1991. The instant complaint was filed on May 6, 1996—well beyond the three year period of limitations. Therefore, Mr. Staudt's claim under § 100.18 is not timely and will be dismissed, with prejudice.

### 5. Count 6: Intentional Concealment

 Count 6 of the complaint, which purports to be a claim for "intentional concealment" alleges that

> Artifex concealed from the plaintiff Steven W. Staudt the true facts concerning the internal spinal fixation devices including, but not limited to, their potential to break and their ability to cause irritation, injury and damage to bones, muscles, connective tissues, blood vessels and nerves, . . . .

(Complaint, ¶ 61.) In addition, he contends that, in "reasonable reliance" on such representations and omissions he "was induced to and did agree to undergo surgery . . . ." (Complaint, ¶ 62.) The defendants maintain that they are entitled to summary judgment on this claim because the plaintiffs are unable to prove the elements of their claim and because the claim is time barred.

It is not clear from the plaintiffs' complaint or their response to the defendants' motion for summary judgment how, if at all, the claim for "intentional concealment" is different from the plaintiffs' claim in count 4 for fraudulent concealment. However, it is clear that both the claim for fraudulent concealment and the claim for intentional concealment allege that Mr. Staudt relied on the defendants' alleged misrepresentations or omissions.

The problem with this allegation is that it is not supported by any proof. The uncontested facts show that Mr. Staudt was not informed that any instrumentation would be implanted in his back during the surgery. (Staudt P.F. ¶ 3.) There is uncontradicted evidence in the record showing that at no time prior to the surgery did Mr. Staudt have any contact with any person employed by or representing defendant, Artifex, nor did Mr. Staudt ever see any advertising or promotional material concerning the Artifex "spinal fixation device" utilized in his surgery. (Defendants' P.F. ¶ 4.) Further, it is undisputed that no representations were made to the plaintiff about the spinal fixation device which would be used in his surgery. (Defendants' P.F. ¶ 5.)

In responding to the defendants' motion for summary judgment, the plaintiffs, as the parties who bear the burden of proof at trial, were obliged to point to "substantial evidence" in support of the essential elements of their claims. See DeBraska, 11 F.Supp.2d at 1025. Here, the plaintiffs have not produced a shred of evidence to support the contention that Artifex made any representations to Mr. Staudt regarding the safety of its devices or that Mr. Staudt relied on such representations or omissions regarding the safety of the devices. As a result, the defendants are entitled to summary judgment dismissing this claim, with prejudice.

### 6. Count 7: Negligent Infliction of Emotional Distress

The defendants' contend that the plaintiffs' claim for negligent infliction of emotional distress in count 7 should be dismissed because it is merely an element of damages of the plaintiffs' general claim for negligence in count 2 and not a separate cause of action. The plaintiffs do not dispute the defendants' characterization of their claim.

While the plaintiffs' claim for negligent infliction of emotional distress appears to be nothing more than a component of their general claim for negligence, I do not believe that the defendants are entitled to dismissal of count 7 on that basis alone. If I were to enter a formal dismissal of this "claim," it would suggest that the plaintiffs are not entitled to seek damages for emotional distress caused by the defendants' alleged negligence. I am not prepared to do that upon the present record. Therefore, I will deny the portion of the defendants' motion seeking summary judgment as to count 7.

### 7. Count 8: Loss of Consortium

Count 8 of the complaint consists of Tracy Staudt's claim that she suffered damages in the form of loss of society, companionship and consortium as a result of the defendants' negligence. The defendants' argue that this claim is derivative of Mr. Staudt's negligence claim and should be dismissed because that claim is time barred.

Mrs. Staudt's loss of consortium claim is indeed derivative of Mr. Staudt's negligence action. *See Utecht v. Steinagel*, 54 Wis.2d 507, 515, 196 N.W.2d 674 (1972). However, I have determined that there is a genuine issue of material fact as to the issue of when Mr. Staudt's negligence claim accrued. Thus, the defendants' are similarly not entitled to summary judgment as to Mrs. Staudt's claim for loss of consortium.

### 8. Conclusion

In sum, the defendants' motion for summary judgment will be granted as to counts 3, 4, 5 and 6 of the complaint. In all other respects, the defendants' motion for summary judgment will be denied.

### III. ADMIRAL'S MOTION FOR SUMMARY JUDGMENT FOR "CLAIMS–MADE" COVERAGE

#### A. Undisputed Facts

When submitting their proposed findings of fact as required under Local Rule 6.05 in connection with this motion for summary judgment, the parties followed the same procedure utilized with respect to the motion for summary judgment discussed in the preceding section of this decision and order. Namely, Admiral included with its motion for summary judgment proposed findings of fact which it believed constituted the factual propositions upon which there is no genuine issue of material fact. However, the plaintiffs did not file a response challenging any of Admirals' proposed findings as required under Local Rule 6.05(2). Instead, the plaintiffs filed additional proposed findings of fact which they assert are undisputed. *See* Local Rule 6.05(b)(2) (Permits the party opposing a motion for summary judgment to present additional propositions deemed to be relevant to the motion.) Admiral did not file a response to the plaintiffs' additional proposed findings although they are permitted to do so under Local Rule 6.05(c).

The problem with the plaintiffs' approach is that it fails to call into question any of the proposed factual findings presented by Admiral. As a result, the court is obliged to conclude that there is no genuine issue as to any of Admiral's proposed factual findings. *Stewart*, 5 F.3d at 1034; Local Rule 6.05(d). Hence, the following facts are undisputed. Admiral issued a policy of "completed operations/products liability" insurance to Artifex. (Admiral's P.F. ¶ 6.) The policy is no. A94EG22202 and has a term from February 21, 1994 to February 21, 1995. (Admiral's P.F. ¶ 6; Plaintiffs' P.F. ¶ 1.) When Admiral issued the policy to Artifex, Artifex's principal place of business was in Newport Beach, California. (Admiral's P.F. ¶ 7.) The policy of insurance was delivered by Admiral to Artifex in California. (Admiral's P.F. ¶ 8.)

By its terms, the policy of insurance was a "claims-made" policy. (Admiral P.F. ¶ 10; Plaintiffs' P.F. ¶ 2.) The coverage provided by Admiral under the policy was for completed operations and products liability insurance. (Admiral P.F. ¶ 9.) In addition, the policy only provided coverage to Artifex for claims which were first made during the "policy period" which is defined as being on or after the "retroactive date" of February 21, 1991, and the expiration of the policy period at 12:01 a.m. on February 21, 1995. (Admiral P.F. ¶ 19.) The "Declarations" page of the policy contains a stamped "Notice" which reads in relevant part:

> Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured while the policy is in force....

(Solinger, Aff.Ex. A.) In addition, the section of the policy explaining the "claims-made" coverage states, in pertinent part:

> The company will pay on behalf of the insured those sums which the insured shall become legally obligated to pay as damages because of A. Bodily Injury or B. Property Damage to which this insurance applies, caused by an occurrence, if the

bodily injury or property damage is included within the completed operations hazard or the products hazard, but only such occurrences for which claims are first made during the policy period provided such occurrences are:

(a) Subsequent to the retroactive date set forth in the schedule, and

(b) Prior to the expiration date set forth in the declarations.

The insurance policy also provides coverage for claims which are made *after* the expiration of the policy period in a limited set of circumstances. In order to distinguish this situation from the above quoted "claims-made" provision of the policy, the court will refer to this later provision of the policy as the "notice clause" of the contract. The notice clause states:

Further, if within the policy period, the insured complies with Amended Condition 4(a) as respects any alleged bodily injury or property damage arising out of an occurrence subsequent to the Retroactive Date and prior to the expiration or cancellation date, coverage hereunder will apply to any claim made or suit brought as a result of that occurrence, even if such claims or suit arises after the expiration of the Claims Extension Period.

\* \* \* \* \* \*

**IV. Condition 4(a)—Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) Upon the insured becoming aware of any alleged bodily injury or property damage to which this insurance applies, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized representatives as soon as practicable.

Following the expiration of the policy, Admiral did not insure Artifex. (Admiral's P.F. ¶¶ 13 and 14.)

Prior to July 1, 1996, Artifex had no notice or knowledge of the claims of Steven and Tracy Staudt which are the subject of this action, nor was it aware of any alleged bodily injury or property damage involving these plaintiffs. (Admiral P.F. ¶¶ 15 and 16.) Before July 1, 1996, Artifex had not notified Admiral of the claims of alleged bodily injury or property damage involving Steven and Tracy Staudt. (Admiral P.F. ¶ 17.) Admiral first gained knowledge and notice of the claims of Steven and Tracy Staudt by receipt of the summons and complaint in the instant action on or about July 2, 1996. The plaintiffs' claims against Artifex were first made with the service of the summons and complaint in the above-captioned action on or after July 1, 1996. (Admiral P.F. ¶ 20.)

On December 19, 1994, Dennis Woodzicka filed a class action lawsuit against Artifex in the eastern district of Wisconsin for injuries sustained from Artifex devices that had been implanted in his back and from which he had sustained injury. (Plaintiffs' P.F. ¶ 3.) The *Woodzicka* claims were filed as a class action and also named Jason Nelson as a second class representative. (Plaintiffs' P.F. ¶ 4.)

Artifex received notice of the *Woodzicka* action via service of the summons and complaint on December 19, 1994. (Plaintiffs' P.F. ¶ 7.) On February 22, 1995, a Motion to Appear Pro Hac Vice which was filed in the *Woodzicka* action indicated that copies of Artifex's court pleadings were being forwarded to Timothy Strattner—counsel for Admiral. (Plaintiffs' P.F. ¶ 8.) The answer filed by Artifex on February 22, 1995, in the *Woodzicka* action is subscribed by counsel for Artifex and counsel for Admiral. (Plaintiffs' P.F. ¶ 9.) Class certification in the *Woodzicka* action was denied by Judge Bechtle in July, 1995.

*B. Law and Analysis*

Admiral argues that it is entitled to summary judgment dismissing the plaintiffs' claims against it because such claims were not made within the policy period and notice as to the Staudts' potential claims was not provided to Admiral within the policy period. The plaintiffs, on the other hand, argue that coverage under the policy with respect to the Staudts' injuries was triggered when the *Woodzicka* class action complaint was filed

on December 14, 1994, insofar as that event constituted a "claim" within the policy period *and* notice of the Staudts' potential claim as required under the notice clause of the policy.

The plaintiffs do not dispute the fact that their claim was actually filed after the policy period or the fact that Admiral did not receive actual notice of their bodily injuries or their potential claims until July 2, 1996, which is well after the expiration of the policy on February 21, 1995. The plaintiffs attempt to get around these undisputed facts by arguing that (a) "class action policy" warrants a finding that filing of the *Woodzicka* class action complaint constituted a claim with respect to the Staudts' injuries within the claims-made clause of the policy; and (b) the *Woodzicka* class action complaint provided Admiral with constructive notice as to the Staudts' bodily injuries in compliance with the notice clause of the policy.

 In a diversity case such as this, a federal court is required to apply the relevant state substantive law. Because the insurance contract was issued in California, the parties agree that the law of that state governs the issue of whether coverage existed under the terms of the insurance policy. "Absent a factual dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law." *Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co.*, 44 Cal.App.4th 1297, 52 Cal.Rptr.2d 268, 269 (1996).

1. *Whether the filing of the Woodzicka class action complaint constituted a "claim made during the policy period" with respect to Mr. Staudt*

 The plaintiffs maintain that a claim with respect to the Staudts' bodily injuries was made within the policy period because the *Woodzicka* class action had been filed within that period, and Mr. Staudt was an unnamed member of the prospective class. In essence, the plaintiffs ask the court to hold that, under California law, the filing of a class action complaint alone constitutes a claim made under claims-made insurance policies with respect to the injuries of any ab-

sent class member to which the insurance applies.

In support for this proposition, the plaintiffs refer to case law regarding general statute of limitations and discovery rules in class action lawsuits. However, the plaintiffs point to no case law in California or any other jurisdiction directly supporting the proposition they advance. In my opinion, "class action policy" created by courts regarding statute of limitations and discovery is not germane to the issue of whether coverage exists under a privately bargained for claims-made insurance policy. In the absence of any relevant authority, I am unable to conclude that California courts would find that the filing of a class action complaint, without more, constitutes a claim made under claims-made insurance policies with respect to the injuries of any prospective, unnamed class member.

2. *"Constructive Notice" Under the Notice Clause of the Policy*

 The plaintiffs also argue that the *Woodzicka* class action complaint served as a means of providing notice to Admiral of a potential claim with respect to Mr. Staudt's bodily injuries under amended Condition 4(a). California courts have determined that clauses similar to the notice clause set forth in Admiral's policy "extend[ ] the limits of insurance coverage in a claims-made policy." *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal.App.4th 963, 66 Cal.Rptr.2d 36, 42 (1997). In addition, the California court in *KPFF* faced an argument regarding constructive notice similar to the one advanced by the plaintiffs and determined that:

> pleadings in a case which contain material relevant ... to circumstances covered by the awareness provision, ... can serve the ... purpose of ... giving written notice of circumstances which may subsequently give rise to other claims.

*Id.* However, in order to trigger coverage under a notice clause like the one involved in the instant action, the pleadings must contain allegations which give the insurer a "reasonable basis to infer the likelihood" of other claims to which the insurance applies. *Id.* at

44. Further, pleadings provided to the insurer which are not intended by the insured as written notice, or pleadings which do not "effectively carry out the function of written notice called for" under the notice clause, cannot be regarded as providing the kind of written notice that constitutes an insuring event under the insurance policy. *Id.*

Under the contract issued by Admiral, notice of an alleged bodily injury invokes coverage even if the claim based on the bodily injury is made after the expiration of the policy period so long as the notice that is given to Admiral is provided within the policy period and is specific. Under amended Condition 4(a) the notice must "identify the Insured" and specify reasonably obtainable information as to (a) the time, place and circumstances of the alleged bodily injury; and (b) the names and addresses of the injured and of available witnesses.

With respect to the merits of the plaintiffs' argument as to coverage, I find that notice which would trigger coverage under Admiral's notice clause was not provided by the transmittal of the *Woodzicka* class action complaint. In my opinion, the *Woodzicka* class action complaint cannot be said to have given Admiral a "reasonable basis to infer the likelihood" of bodily injury claims other than those of the named plaintiffs. *Id.* Paragraph 4 of the complaint in the *Woodzicka* case defined the proposed class as follows:

> The proposed class representatives and named plaintiffs seek to represent the following class:
>
> All citizens and residents of the states and territories of the United States of America, who have had an internal spinal fixation device utilizing pedicle screws implanted posteriorly in their backs; and all those persons (including estates, representatives, spouses, children, relatives and/or "significant others") who have a claim because of their personal relationship(s) with an individual who has had a spinal fixation device utilizing pedicle screws implanted in his or her back.

(Goldser Aff. Ex. C p. 3.) The proposed class was not even limited to recipients of Artifex hardware. These allegations arguably "present[ed] a speculative possibility of [other bodily injury] claims" but that is not sufficient to find constructive notice to the insurer. *Id.* The broad definition of the class and the unique nature of each prospective class member's injuries could not reasonably be said to have given Admiral any basis to determine the likelihood of the existence of other claims to which its insurance applied or the number of such possible claims. *See Id.* at 44.

In addition, I do not believe that the *Woodzicka* class action pleading served the function of written notice that is called for under Admiral's notice clause. Such clause requires that the notice given by the insured must provide Admiral with detailed information from which Admiral can ascertain the identity of the party or parties with potential bodily injury claims and the circumstances surrounding the event which caused the bodily injuries. Nothing in the *Woodzicka* class action pleading transmitted to Admiral identifies information regarding the circumstances surrounding the bodily injury claims of the Staudts or any other unnamed prospective class member. The potential bodily injury claims of the prospective unnamed class members in the *Woodzicka* pleading each occurred as a result of a separate implantation of a pedicle device not limited to devices manufactured by Artifex. As a result, the circumstances surrounding the "occurrence" giving rise to the bodily injury—the implantation of a defective device—would vary from person to person. Thus, I believe it would be unreasonable to conclude that Admiral had received constructive notice of the circumstances surrounding those claims much less the identity of the potential claimants solely as a result of the class action complaint.

In addition, it is undisputed that Artifex was not aware of Mr. Staudt's bodily injury claims when it transmitted the *Woodzicka* class action complaint to Admiral. Nor is there evidence in the record that Artifex was aware of the occurrence of any bodily injuries beyond those of the named plaintiffs in the class action pleading. Because Artifex was not aware of such other injuries, I am unable to conclude that Artifex intended the pleading to serve as written notice of the Mr. Staudt's potential bodily injury claims or the

potential claims of other persons to which the insurance applied. This factor also weighs against a finding that the *Woodzicka* pleading provided Admiral with constructive notice of Mr. Staudt's injuries. *Id.*

The plaintiffs point to the decision of the court of appeals for the ninth circuit in *Continental Ins. Co. v. Metro–Goldwyn–Mayer, Inc.*, 107 F.3d 1344 (9th Cir.1997) to support their argument that the class action pleading provided Admiral with constructive notice. In that case, the federal appellate court held that a copy of a complaint seeking relief on behalf of a class of producers with respect to a merger between Metro–Goldwyn–Mayer ["MGM"] and Pathe Communications ["Pathe"] constituted sufficient notice of the claims of unnamed producers under the relevant claims-made insurance policy. In my opinion, this case is not controlling as it is factually distinguishable.

The function of the notice clause at issue in *Continental v. MGM* was to provide the insurer with notice of the occurrence of a wrongful act. As a result, the court of appeals for the ninth circuit held that Continental's receipt of a class action complaint arising from the merger—the wrongful act—along with a copy of a "laundry list" of potential claims of other producers stemming from the merger provided the requisite notice. *Id.* at 1348. In addition, in *Continental v. MGM,* the class action complaint stemmed from only one occurrence of a wrongful act—the merger. In the instant case, the class action pleading involves unlimited occurrences of wrongful acts insofar as each implantation of a pedicle device constituted a separate wrongful act.

*Continental v. MGM* does not stand for the proposition that receipt of a class action complaint always provides constructive notice to an insurer of the potential claims of all unnamed class members to which the insurance policy applies, if any. To the contrary, the appellate court in *Continental v. MGM* specifically limited its analysis to determining whether the information provided to Continental by MGM satisfied the purpose and requirements of the particular insurance policy at issue in that case. Hence, I am unable to conclude that the holding in *Continental v.*

*MGM* mandates a finding that the pleading transmitted to Admiral provided sufficient notice under its insurance policy.

The decision of the California court of appeals in *Continental Ins. Co. v. The Superior Court of Los Angeles County,* 37 Cal.App.4th 69, 43 Cal.Rptr.2d 374 (Cal.Ct.App.1995), which is also cited by the plaintiffs is similarly distinguishable. The notice clause at issue in *Continental v. The Superior Court* merely required that notice be given to the insured of "occurrences" which may lead to a future claim. Such a provision requires far less information than the specifics required in the notice clause of Admiral's insurance policy. Further, the *Continental v. The Superior Court* case did not involve a class action lawsuit, and the court was not asked to decide whether the receipt of a class action lawsuit gave the insured constructive notice under the terms of the policy.

In sum, I find that notice was not given to Admiral in accordance with the terms of its policy. Therefore, no coverage exists for the plaintiffs' claims against Artifex. Admiral's motion for summary judgment will be granted.

## IV. ORDER

Therefore, IT IS ORDERED that the defendants' motion for summary judgment "Dismissing All Claims Against Defendants" be and hereby is granted in part and denied in part.

IT IS ALSO ORDERED that the defendants' motion for summary judgment be and hereby is granted as to counts 3, 4, 5 and 6 of the complaint.

IT IS FURTHER ORDERED that counts 3, 4, 5 and 6 of the complaint be and hereby are dismissed, with prejudice.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment be and hereby is denied as to counts 1, 2, 7 and 8.

IT IS FURTHER ORDERED that the parties be and hereby are directed to bear their own costs with respect to the defendants' motion for summary judgment "Dismissing All Claims Against Defendants."

IT IS FURTHER ORDERED that Admiral's motion for summary judgment for "Claims–Made Coverage" be and hereby is granted.

IT IS FURTHER ORDERED that the plaintiffs' claims against Admiral be and hereby are dismissed, with prejudice, and with costs.