Hillsborough-northern judicial district
No. 2007-628

MARILYN BATES

v.

VERMONT MUTUAL INSURANCE COMPANY

Argued: March 20, 2008
Opinion Issued: June 13, 2008

*Cronin & Bisson, P.C.*, of Manchester (*John F. Bisson* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Gary M. Burt* and *Mary Ann Dempsey* on the brief, and *Mr. Burt* orally), for the respondent.

BRODERICK, C.J. The respondent, Vermont Mutual Insurance Company (Vermont Mutual), appeals the denial by the Superior Court (*Abramson,* J.) of its summary judgment motion, and the grant of petitioner Marilyn Bates' cross-motion for summary judgment. We affirm.

# I

The record supports, or the trial court found, the following. On December 5, 2004, Bates was injured when she fell down the steps at Milford Mill, the apartment complex where she lived in Milford. Milford Mill is owned by Milford Mill Limited Partnership (MMLP). MMLP was insured through a businessowners policy (policy) issued by Vermont Mutual. Paramedics were called; Bates was transported to St. Joseph's Hospital in Nashua, where she was an in-patient for five days; she was subsequently transferred to the Harborside nursing home in Milford; and she returned to Milford Mill on December 23, 2004. Bates' medical bills totaled approximately $16,080.

By letter dated March 16, 2005, Bates' counsel informed Stewart Property Management (Stewart)—the management company for Milford Mill—of her injuries, including photographs of the same, and her hospital and nursing home stays. Bates' counsel requested that the letter and photographs be forwarded "to the insurance carrier or the appropriate person and ask that they contact us." He also requested that Stewart provide "any accident reports or other documentation you may have relating to the injury."

By letter dated March 29, 2005, a representative for Vermont Mutual responded, requesting that Bates' counsel forward any medical expenses that had been incurred, and that Bates meet with Vermont Mutual in order to review the circumstances of the accident. On April 25, 2005, Bates' counsel replied:

> I will be meeting with [Bates] in the coming weeks and will obtain the information you requested. Thereafter, I intend to contact you to discuss a meeting with [Bates].

One month later, Vermont Mutual's representative responded:

> This follows our request of March 29, 2005 concerning a possible meeting with your client and your acknowledgement through correspondence to us on April 25, 2005.
>
> We have completed our investigation into this accident and have determined that there was no negligence on the part of [MMLP] in causing your client to fall. . . .
>
> . . . .
>
> Accordingly, [Vermont Mutual] will not be making any voluntary settlement with your client concerning the injury sustained. In the event that you or your client have information that would

cause [Vermont Mutual] to change their position in this matter and you feel a meeting would be appropriate, pleased contact this writer to arrange a meeting.

On February 7, 2006, Bates brought suit against MMLP and Stewart, alleging negligence and seeking damages for her injuries. During the discovery phase of that action, MMLP and Stewart disclosed their insurance information. Stewart had a policy with OneBeacon Insurance Company (OneBeacon), which included $10,000 of medical expense payment coverage. On request, OneBeacon remitted that amount to Bates. MMLP provided a copy of the declarations page of its policy with Vermont Mutual, which indicated that the policy period ran from December 20, 2003, to December 20, 2004, and included $5,000 of medical expense payment coverage. On June 20, 2006, Bates reported her medical expenses to Vermont Mutual and requested payment of the $5,000 medical expense coverage; Vermont Mutual refused.

Bates then brought this petition for declaratory judgment, seeking to establish that Vermont Mutual was required to provide medical payment coverage for her injuries, under its policy issued to MMLP. Both parties moved for summary judgment. Vermont Mutual contended that it was not obligated to provide Bates with the policy's medical expense coverage because she had not timely reported her medical expenses to it. Bates countered that she had complied with the policy's notice requirements, Vermont Mutual had not been prejudiced by her alleged failure to provide it with timely notice, and there was no material breach of the policy. The trial court ultimately denied Vermont Mutual's motion and granted Bates' cross-motion. This appeal followed.

## II

In reviewing the trial court's grant of summary judgment, we consider the affidavits, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Philbrick v. Liberty Mut. Fire Ins. Co.*, 156 N.H. 389, 390 (2007). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. *Id.* We review the trial court's application of the law to the facts *de novo. Id.* Further:

Resolution of this dispute requires us to interpret the insurance policy. Interpretation of an insurance policy is a question of law. We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. Where the terms of the policy are clear and unambiguous, we accord the

language its natural and ordinary meaning. However, if the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer. Absent a statutory provision or public policy to the contrary, an insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language. For exclusionary language to be considered clear and unambiguous, two parties cannot reasonably disagree about its meaning. Pursuant to RSA 491:22-a (1997), the burden of proving lack of insurance coverage is on the insurer.

*Id.* at 390-91 (citations and quotation omitted).

The language of the Vermont Mutual business owners policy at issue is provided in subsection A.2, entitled "Medical Expenses," of the liability coverage form, and reads, in pertinent part:

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations; provided that:

    (a)   The accident takes place in the "coverage territory" and during the policy period;

    (b)   *The expenses are incurred and reported to us within one year of the date of the accident;* and

    (c)   The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault.

(Emphasis added.)

## III

The trial court initially noted that while the "notice provision requires that the medical expenses be reported to Vermont [Mutual] within one year of the accident, it does not specify *who* must report the expenses." It subsequently noted that because Bates was not a party to the insurance contract, she had not affirmatively agreed to the reporting requirement, and it was reasonable to infer that "MMLP . . . [was] the entity who would have been required to report the expenses . . . within one year." The trial court continued, "Alternatively, the policy language concerning precisely

who must report the expenses is ambiguous, and must be construed against [Vermont Mutual]." The court concluded:

> [T]his notice provision would not apply to [Bates], and Vermont [Mutual] cannot assert lack of notice as a defense against the petitioner.
>
> However, even if the petitioner was required to report her expenses to Vermont [Mutual] within one year, the Court finds that Vermont [Mutual] cannot claim failure to report as a basis for denying coverage. If the policy is an occurrence-based policy and an insured gives late notice, the insurer must show prejudice in order to deny coverage.

(Citations and quotation omitted.)

■ We agree with the trial court that the notice provision fails to specify which party—the insured or the injured person—must report the medical expenses to Vermont Mutual within one year of the date of the accident. However, we also agree with the trial court that if the policy is an "occurrence" policy, the insurer must show prejudice in order to deny coverage to a party giving late notice. Consequently, we need not decide here which party is required to report, or if the notice provision is ambiguous. Instead, and for the purposes of this appeal only, we assume without deciding that Bates was required to report her medical expenses within one year of the date of her accident, as argued by Vermont Mutual.

With respect to our assumption, it is clear that Bates failed to report her medical expenses to Vermont Mutual within one year of her December 5, 2004 accident. It is equally clear, however, that Bates did report her medical expenses to Vermont Mutual on June 20, 2006, less than seven months after the reporting deadline. We turn our focus, therefore, to whether the policy is an "occurrence" or "claims-made" policy and whether Bates' delay in reporting was fatal to her claim.

## IV

The trial court determined that the policy at issue is an occurrence policy.

■ Generally, if an insured gives late notice, the insurer must show prejudice to deny coverage. The burden to show prejudice, however, may depend on the type of insurance. In liability insurance, an occurrence policy covers all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the

insured or made known to the insurer during the policy period. An insurer must show prejudice to deny coverage under an occurrence policy.

██ . . Claims-made policies provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period. There is no requirement that an insurance company prove it was prejudiced due to lack of notice under a claims[-]made policy. This is because, unlike an occurrence policy in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period, a claims[-]made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred. Claims-made policies necessarily include a presumption that the insurer suffers prejudice when the insurer does not receive timely notice of the claim during the policy period, preventing the insured from seeking coverage under subsequent policies.

*Bianco Prof. Assoc. v. Home Ins. Co.*, 144 N.H. 288, 295-96 (1999) (citations, quotations and brackets omitted).

Vermont Mutual contends that the medical expenses section of the policy is "the equivalent of a 'claims-made' policy," and that this court "has only imposed a requirement of prejudice in cases where an insurer requires that an insured provide notice of a claim 'as soon as practicable.'"

██ We tend to agree with the characterization, noted at oral argument, that the medical expenses section of the policy is somewhat of a hybrid between an occurrence and a claims-made policy. However, reading the policy as a whole and as would a reasonable person, as we must, we believe that, on balance, the section and the policy are more correctly classified as occurrence-based. Here, the policy period ran from December 20, 2003, to December 20, 2004. Bates' fall occurred on December 4, 2004. As in the case of an occurrence policy, and unlike a claims-made policy, the medical expenses section required that Bates' expenses be reported, not by December 20, 2004 (the end of the policy period), but by December 4, 2005 at the latest—a full eleven and one-half months after the end of the policy period.

██ While we agree with Vermont Mutual's contention that in those cases noted in its brief where we found a requirement of prejudice, the occurrence policy at issue required that the insured provide notice of a claim "as soon as practicable," our classification of a policy as occurrence-based has not turned upon the presence or absence of that term. Instead,

our classification of a liability policy as either occurrence-based or claims-made has consistently centered upon the differentiation in notice requirements outlined in *Bianco*: specifically, whether the policy provides coverage for claims based on an event occurring during the policy period, "regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period" (occurrence-based), or for claims that are made against the insured and "reported to the insurer *during the policy period*" (claims-made), *id.* at 296 (emphasis added). *See, e.g., Catholic Med. Ctr. v. Executive Risk Indem.*, 151 N.H. 699, 703-04 (2005); *Benson v. N.H. Ins. Guaranty Assoc.*, 151 N.H. 590, 591 (2004); *Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 683 (1993).

Further, we note the language contained in section E, entitled "Liability And Medical Expenses General Conditions," of the policy's liability coverage form. Subsection E.2, entitled "Duties In The Event Of Occurrence, Offense, Claim Or Suit," provides, in pertinent part:

> a. You must see to it that we are notified *as soon as practicable* of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> > (1) How, when and where the "occurrence" or offense took place;
> >
> > (2) The names and addresses of any injured persons and witnesses; and
> >
> > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
> > (1) Immediately record the specifics of the claim or "suit" and the date received; and
> >
> > (2) Notify us *as soon as practicable.*
>
> You must see to it that we receive written notice of the claim or "suit" *as soon as practicable.*
>
> c. You and any other involved insured must:
>
> > (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> >
> > (2) Authorize us to obtain records and other information;
> >
> > (3) Cooperate with us in the investigation, or settlement of the claim or defense against the "suit" . . . .

(Emphases added.)

As in the case of subsection A.2 ("Medical Expenses"), and given our earlier assumption that Bates was required to report her medical expenses within one year of her accident, we again need not decide here if MMLP is the party subject to the reporting requirements of subsection E.2, or if an injured party's medical expenses are included in those items subject to these reporting requirements. Perhaps most important, we also need not determine if the required time frame of the notice requirement in subsection E.2—"as soon as practicable"—introduces an ambiguity with that of subsection A.2—"within one year of the date of the accident." What we do conclude, however, is that the "as soon as practicable" time frame of subsection A.2 provides further support for the classification of the policy as occurrence-based and not claims-made. In sum, we agree with the trial court that the policy is an occurrence policy. As such, for Vermont Mutual to deny Bates coverage due to the late reporting of her medical expenses, it was required to show that it had been prejudiced. *Bianco*, 144 N.H. at 296; *cf. Catholic Med. Ctr.,* 151 N.H. at 705 (in denying plaintiffs' request that we find the presumption of prejudice in *Bianco* to be rebuttable, we specified, "prejudice for an untimely report in the case of a claims-made policy is not an appropriate inquiry" (quotation and brackets omitted)).

■ Based upon our review of the record, we agree with the trial court that Vermont Mutual "was not prejudiced in any manner by the late disclosure of medical expenses." Less than four months after Bates' fall in December 2004, Bates' counsel had corresponded with the management company for Milford Mill and informed it of her injuries, her transport to and inpatient stay at St. Joseph's Hospital, and her subsequent transfer to and stay at Harborside nursing home. The correspondence included photographs of Bates' injuries, and her counsel requested that the correspondence and photographs be forwarded to the insurance carrier. We concur with the trial court that, consequently, Vermont Mutual "had at least some notice of the type of medical expenses that [Bates] might seek to recover." In May 2005, subsequent to Vermont Mutual's request for Bates' medical expenses and a meeting with her, but prior to those actions actually occurring, Vermont Mutual's representative informed Bates' counsel that it had completed its investigation into the accident and that Vermont Mutual would not be making any voluntary settlement with Bates concerning her injuries. Again, we concur with the trial court's conclusion that this "suggest[s] that [Bates' medical] expenses were not crucial to [Vermont Mutual's] investigation."

Having failed to meet its burden of demonstrating that it had been prejudiced by the late reporting of Bates' medical expenses, Vermont

Mutual cannot deny her coverage on that basis. Consequently, we affirm the trial court's denial of Vermont Mutual's summary judgment motion, and the grant of Bates' cross-motion.

Finally, we note Bates' counsel's March 2005 correspondence, via the management company, requesting "any . . . other documentation you may have relating to the injury." Given our holding above, we need not decide here if that request encompassed one for information concerning Vermont Mutual's policy. Nor do we need to decide if Vermont Mutual's failure to provide such information violated an "obligation of good faith and fair dealing," as argued by Bates. Instead, we simply concur with the trial court that:

> Despite corresponding with [Bates] on three separate occasions, Vermont [Mutual] never (1) provided [her] with a copy of the declarations page or any other part of the policy from which she could determine medical expense coverage existed; (2) informed [her] that she *could* obtain medical expense coverage under the policy; or (3) when requesting [her] medical bills, apprised [her] of the one-year reporting requirement.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.