Filed 3/23/15  Brenegan v. Fireman's Fund Ins. Co. CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| KENTON BRENEGAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE CO.,<br><br>    Defendant and Respondent. | 2d Civil No. B254760<br>(Super. Ct. No. 56-2013-00437385-CU-IC-VTA)<br>(Ventura County) |

Kenton Brenegan appeals from the judgment entered in favor of Fireman's Fund Insurance Co., respondent, after the trial court granted its motion for summary judgment. Appellant made a claim for medical expenses pursuant to a medical expenses clause in respondent's insurance policy.  The trial court concluded that appellant was not entitled to recover his medical expenses because he had failed to timely comply with a reporting requirement.  Appellant contends that the trial court erred because (1) respondent did not show that it was prejudiced by the delay, and (2) he should be equitably excused from compliance with the reporting requirement.  We disagree and affirm.

*Background*

In October 2010 appellant fell down the stairs of a parking facility in Mission Hills.  The facility was owned by G&L Realty Corp., LLC (G&L), which had insurance coverage under a commercial general liability policy issued by respondent.  The policy provided that respondent will pay "medical expenses . . . for bodily injury caused by an

accident . . . [¶] provided that: [¶] (a) The accident takes place in the coverage territory and during the policy period; [¶] (b) The expenses are incurred and reported to us within one year of the date of the accident . . . ." (Italics omitted.) The policy further provided that payments for medical expenses will be made "regardless of fault" and "will not exceed the applicable limits of insurance." The medical expenses limit for any one person is $20,000.[1]

In a November 2010 letter to G&L, appellant's counsel asserted "[a] claim for damages" and requested that G&L "forward this letter to your liability insurance carrier." Four days later, G&L's counsel wrote a letter to appellant acknowledging receipt of his claim. The letter said nothing about G&L's insurance carrier.

In November 2011 appellant filed an action against G&L. During discovery in September 2012, appellant allegedly "learned of the existence of [respondent's insurance] policy, but . . . did not learn at this time that the policy provided medical payments coverage or had any special reporting requirements."

In a letter to respondent dated April 25, 2013, appellant's counsel demanded "payment of any and all Med Pay available under" its policy insuring G&L. Respondent's employee, Bob Holliman, declared that this letter was respondent's first notice of appellant's loss. According to Holliman, respondent "had not received any communications from G&L . . . or its attorney" about the accident. Respondent "notified [appellant] it was denying his claim because it did not receive notice of medical expenses within one year of the accident" as required by the medical expenses clause of the policy.

In June 2013 appellant filed the instant action against respondent. Appellant's complaint consisted of two causes of action: breach of insurance contract and insurance bad faith. Appellant alleged that, while on G&L's premises, he had fallen "and suffered injuries . . . resulting in $65,348.02 in reasonable and necessary medical expenses."

---

[1] The declarations page of the policy shows a medical expenses limit of $10,000. But a policy amendment provides: "The Medical Expense Limit of Insurance shall be the greater of: [¶] a. $20,000 [for] Any One Person; or [¶] b. The amount shown in the Declarations."

2

The trial court granted respondent's motion for summary judgment because appellant had not given timely notice of his claim for medical expenses. The court set forth its ruling in a five-page minute order. It reasoned that the medical expenses clause is in effect "a claims-made policy, [not an occurrence policy,] with the condition of coverage that the claim be made within one year to the insurer." The court rejected appellant's argument that coverage applied unless respondent showed actual prejudice from the delay in making the claim: "[W]hether the delay was prejudicial to the insurer is immaterial. . . . [¶] . . . To apply the notice-prejudice rule to a claims-made policy would be to rewrite the policy, extending the policy's coverage at no cost to the insured."

*Standard of Review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "We apply a de novo standard of review to an order granting summary judgment, when [as here] on undisputed facts, the order is based on the interpretation of the terms of the insurance policy. [Citation.]" (*Morris v. Employers Reinsurance Corp.* (2000) 84 Cal. App. 4th 1026, 1029.)

*Principles of Interpretation of Insurance Policies*

" ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." ' [Citation.] Accordingly, in interpreting an insurance policy, we seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the policy. [Citations.] When interpreting a policy provision, we give its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense. [Citation.]" (*Haynes v. Farmers Ins. Exch.* (2004) 32 Cal. 4th 1198, 1204.)

*Respondent Is Not Required to Show Prejudice*

The central issue here is whether the medical expenses clause is analogous to an "occurrence" policy or a "claims-made" policy. "California's 'notice-prejudice' rule operates to bar insurance companies from disavowing coverage on the basis of lack of

3

timely notice unless the insurance company can show actual prejudice from the delay. The rule was developed in the context of 'occurrence' policies. [Citations.]" (*Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1357.) The notice-prejudice rule does not apply to claims-made policies. (*Id.*, at pp. 1358-1359.)

"[I]n classic occurrence policies, coverage attaches when the occurrence takes place even though a claim is lodged at a later time. Notice provisions in these policies serve to aid the insurer in investigating, settling and defending claims, not as a definition of coverage. [Citation.]" (*Helfand v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869, 888.) In claims-made policies, "coverage itself depends on reporting the claim to the insurer during the policy period." (*Ibid.*) "[A] reporting requirement gives the insurer administrative 'closure' and that is surely worth something, at least to the insurer, which is passed on to the insured in the form of lower premiums." (*Root v. American Equity Specialty Ins. Co.* (2005) 130 Cal.App.4th 926, 946.) " ' "[C]laims made" policies aid in making insurance more available and less expensive than "occurrence" policies.' [Citations.]" (*KPFF, Inc. v. California Union Ins. Co.* (1997) 56 Cal.App.4th 963, 972.)

" '[T]he requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed.' [Citation.]" (*Id.*, at p. 1358.) In a claims-made policy, on the other hand, "it [is] transmittal of notice of the claim to the insurer which [is] the event that invoke[s] coverage." (*Id.*, at p. 1357.) "To apply the notice-prejudice rule to a claims made and reported policy would . . . convert that policy into a pure claims made policy, and therefore give the insured a better policy than he paid for." (*Root v. American Equity Specialty Ins. Co.*, *supra*, 130 Cal.App.4th at p. 947.) "[C]ourts ought not to be handing out insurance coverage for claims that the insurer never bargained to pay and the insured never paid premiums for. [Citations.]" (*Id.*, at p. 938.)

The medical expenses clause here is not the typical claims-made policy clause because coverage does not "depend[] on reporting the claim to the insurer during the policy period." (*Helfand v. National Union Fire Ins. Co.*, *supra*, 10 Cal.App.4th at p.

4

888.)  But it is analogous to a claims-made policy clause.  Unlike an occurrence policy, the medical expenses clause "contains a reporting element essential to coverage."  (*Ibid.*)  Regardless of fault, the clause covers medical expenses up to $20,000 provided:  "The expenses are incurred and *reported* to us within one year of the date of the accident."  (Italics added.)  Coverage is triggered not by the accident, but by reporting the medical expenses within one year of the date of the accident.  " 'Claims-made . . . policies are essentially *reporting* policies.' "  (*Pacific Employers Ins. Co. v. Superior Court*, *supra*, 221 Cal.App.3d at p. 1358.)  Because the medical expenses clause "makes notice an element of coverage," the application of "the notice-prejudice rule would materially alter the insurer's risk."  (*Helfand v. National Union Fire Ins. Co.*, *supra*, 10 Cal.App.4th at p. 888.)  "Where [as here] the policy provides that special coverage for a particular type of claim [medical expenses regardless of fault] is conditioned on express compliance with a reporting requirement, the time limit is enforceable without proof of prejudice. [Citation.]"  (*Venoco, Inc. v. Gulf Underwriters Ins. Co.* (2009) 175 Cal.App.4th 750, 760.)

Based on *Bates v. Vermont Mutual. Ins. Co.* (2008) 157 N.H. 391, 950 A.2d 186 (*Bates*), appellant argues that the medical expenses clause is analogous to an occurrence policy.  The *Bates* court construed a medical expenses clause that, like the clause here, gave coverage regardless of fault provided:  "The expenses are incurred and reported to us within one year of the date of the accident."  (*Id.*, 950 A.2d at p. 189, italics omitted.)  The court stated: "We tend to agree with the characterization, noted at oral argument, that the medical expenses section of the policy is somewhat of a hybrid between an occurrence and a claims-made policy.  However, reading the policy as a whole and as would a reasonable person, . . . we believe that, on balance, the section and the policy are more correctly classified as occurrence based."  (*Id.*, at p. 191.)  The court reasoned that "[c]laims-made policies provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period."  (*Id.*, at p. 190.)  The medical expenses clause in *Bates* required that the claim be reported not during the policy period, but "within one year of the date of the accident."  (*Id.*, at p. 189.)  Thus, unlike a

5

claims-made policy, Bates's claim for medical expenses would have been timely if it had been reported one year after his accident, which was "a full eleven and one-half months after the end of the policy period." (*Id*., at p. 191.)

The *Bates* court observed that, in other cases "where [it had] found a requirement of prejudice, the occurrence policy at issue required that the insured provide notice of a claim 'as soon as practicable.' " (*Bates*, *supra*, 950 A.2d at p. 191.) The court noted that in the policy presently before it, subsection E.2 contained clauses providing: (1) "You must see to it that we are notified *as soon as practicable* of an 'occurrence' or an offense which may result in a claim," and (2) "Notify us *as soon as practicable*" if a claim is made. (*Ibid*.) Subsection E.2 was "entitled 'Liability And Medical Expenses General Conditions.' " (*Ibid*.) The court continued: "[W]e need not determine if the required time frame of the notice requirement in subsection E.2 - 'as soon as practicable' - introduces an ambiguity with that of subsection A.2 [the medical expenses clause] - 'within one year of the date of the accident.' What we do conclude, however, is that the 'as soon as practicable' time frame of subsection [E].2 provides further support for the classification of the policy as occurrence-based and not claims-made." (*Id*., at p. 192.) Since the medical expenses clause was analogous to an occurrence policy, the court decided that "the insurer must show prejudice in order to deny coverage to a party giving late notice." (*Id*., at p. 190.)

*Bates* is distinguishable. Like subsection E.2 of the policy in *Bates*, section IV of the policy here contains clauses providing: (1) "You must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim," and (2) "Notify us as soon as practicable" if a claim is made. (Bold omitted.) But unlike subsection E.2 of the policy in *Bates*, section IV is not entitled "Liability *And Medical Expenses* General Conditions." (*Bates*, *supra*, 950 A.2d at p. 191, italics added.) Section IV is entitled "Commercial General Liability Conditions." The title makes no reference to medical expenses, and section IV cannot be construed as applying to these expenses. Although the medical expenses clause here is part of a commercial general liability policy, it is unrelated to liability because it applies regardless of fault. As the trial court

6

stated, "Essentially, [the clause says] show us an injury [on the insured's premises], and we will pay the medical bills." Thus, in contrast to subsection E.2 in *Bates*, the title of which expressly included medical expenses, section IV in the instant case "provides [no] support for the classification of the policy as occurrence-based and not claims-made." (*Id.*, at p. 192.)

Even if *Bates* were not distinguishable, we would decline to follow it. We disagree with the court's conclusion that the medical expenses clause is "more correctly classified as occurrence-based" because it does not require that a claim be reported to the insurer during the policy period. (*Bates*, *supra*, 950 A.2d at p. 191.) The medical expenses clause is more correctly classified as claims-based because the reporting requirement is an element of coverage.

This interpretation of the medical expenses clause is supported by our decision in *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, *supra*, 175 Cal.App.4th 750. There, an oil company, Venoco, was covered under a liability policy with a pollution exclusion clause. The policy included a pollution buy-back provision that created an exception to the pollution exclusion, provided that certain conditions were met. The conditions included a reporting requirement: the pollution occurrence " 'became known to the Insured within 7 days after its commencement and was reported to Insurers within 60 days thereafter.' " (*Id.*, at pp. 758, italics omitted.) The pollution occurrence was not required to be reported during the policy period. Years after the expiration of the policy, pollution lawsuits were filed against Venoco. It requested that the insurer, Gulf, provide a defense. Venoco asserted that "at least five of the actions . . . contained injury claims alleged to have occurred 'during the term of Gulf's insurance coverage.' " (*Id.*, at p. 756.)

Gulf refused to defend Venoco. It contended that, because " 'Venoco never gave any notice of any occurrence to Gulf during the effective period of the Gulf Policy or sixty days thereafter, Venoco has not satisfied the conditions of the Buy-Back Clause.' " (*Venoco, Inc. v. Gulf Underwriters Ins. Co.*, *supra*, 175 Cal.App.4th at p. 756.) Venoco claimed that "the 60-day reporting requirement is unenforceable because Gulf did not prove it would suffer substantial prejudice if notice were given later than 60 days." (*Id.*,

at p. 759.)  This court rejected Venoco's claim.  We reasoned: "Imposing the prejudice requirement that Venoco seeks would expand the reporting time limit and impermissibly alter its agreement with Gulf." (*Id*., at p. 760.)  "The prejudice requirement prevents the insured forfeiting an otherwise valid claim.  By contrast, compliance with the reporting requirement here is 'an element of coverage.' [Citation.]  The issue is whether the insured met the basic coverage requirements.  [Citation.]  Applying a proof of prejudice requirement would both alter the coverage elements and be unfair to the insurer because it 'would materially alter the insurer's risk.' [Citation.]" (*Id*., at p. 761.)  The same reasoning applies to the one-year reporting requirement in the instant case.  The "provision here is analogous to claims made and reported policies [citation] where time is of the essence." (*Ibid*.)

In support of his argument that California's notice-prejudice rule applies, appellant also cites *Hanover Insurance Co. v. Carroll* (1966) 241 Cal.App.2d 558 (*Hanover*). *Hanover* has no bearing on the instant case because it involved a completely different factual situation.  In *Hanover* an employee was inside his employer's vehicle when it was struck by an uninsured driver.  The employee was injured.  The employer's automobile insurance policy named the employee as an additional insured, but the employee was unaware of this coverage at the time of the accident.  Thus, he did not notify the insurer of his injuries within 30 days of the accident as required by the policy's uninsured motorist coverage.  The appellate court held that, in these circumstances, the insurer cannot assert the delay in notification "to defeat recovery under the policy unless there is prejudice to the insurer." (*Id*., at p. 566.)  The court reasoned:  "[I]n the case of uninsured motor vehicle coverage, as herein, where the claimant is an additional insured, there may be considerable delay before the injured person discovers that the coverage is available." (*Ibid*.)  The court never considered whether the uninsured motorist coverage was analogous to a claims-made policy or an occurrence policy.

*Respondent Is Not Entitled to Be Equitably Excused*

*From Compliance with the One-Year Reporting Requirement*

Appellant contends that he should be "equitably excused" from complying with the one-year reporting requirement because he did not know of the policy's existence within the one-year reporting period. Appellant relies on *Root v. American Equity Specialty Ins. Co.*, *supra*, 130 Cal.App.4th 926. There, the court concluded that the reporting requirement in a claims-made professional malpractice insurance policy was "equitably excused." (*Id.*, at p. 929.) The plaintiff, Root, was an attorney. Three days before his malpractice insurance was due to expire, a former client filed a malpractice action against him. When Root learned of the suit two days after the expiration, he immediately notified his insurer, which "denied any coverage under the policy because Root had not reported the claim during the policy period." (*Id.*, at p. 931.) The trial court granted summary judgment in the insurer's favor, and Root appealed.

The Court of Appeal concluded that the reporting requirement in Root's policy "functions as a condition precedent to coverage, not as a definition of coverage." (*Root v. American Equity Specialty Ins. Co.*, *supra*, 130 Cal.App.4th at p. 946.) The court noted that California has a "common law rule that conditions can be excused if equity requires it." (*Id.*, at p. 948.) In view of the particular circumstances of the case before it, the court decided that "it would be 'most inequitable' to enforce the condition precedent of a report during the policy period." (*Ibid.*) Accordingly, the court reversed the summary judgment. It "emphasize[d] the narrowness of [its] decision." (*Id.*, at p. 929.) The court stated, "[B]y no means do we blanketly apply a blunderbuss 'notice-prejudice' rule to this, or any other claims made and reported malpractice policy." (*Ibid.*)

If the one-year reporting requirement here were a condition precedent that could be excused if equity required it, equity would not require that it be excused under the particular circumstances of this case. In *Root* the court observed that "equity might not require excuse of the [reporting] condition" if Root "had delayed reporting the claim beyond the day on which he received confirmation of the claim." (*Root v. American Equity Specialty Ins. Co.*, *supra*, 130 Cal.App.4th at p. 948.) Appellant was unjustifiably

9

dilatory in reporting his medical expenses claim to respondent. From the beginning, appellant took it for granted that G&L was insured. In a November 2010 letter to G&L asserting his client's claim, appellant's counsel requested that G&L "forward this letter to your liability insurance carrier." Counsel did not ask for the policy number and name of the carrier so that he could contact it. Nor did he ask whether the policy provided for the payment of medical expenses and, if it did, whether special reporting requirements applied. Appellant alleged that, during discovery in September 2012, approximately two years after the accident, he first "learned of the existence" of respondent's policy. Appellant did not diligently pursue the medical expenses issue at that time. Appellant's counsel declared that it was not until seven months later, on April 25, 2013, that he "directed his staff to demand medical payments benefits from" respondent.

In ruling that appellant was not entitled to equitable relief, the trial court aptly noted: "[Appellant] knew of his injuries in October 2010. He and his counsel[,] acquired soon thereafter[,] were in control of his litigation, and in control of requesting insurance information." "[T]hat [appellant] gave notice to G&L and [that] G&L failed to notify its carrier would at most support a claim against G&L."

*Disposition*

The judgment is affirmed. Respondent shall recover its costs on appeal.

NOT FOR PUBLICATION

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

10

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____

Ball and Yorke, Esther R. Sorkin, for Appellant.

John *v.* Hager, Christine W. Chambers; Hager & Dowling, for Respondent.